BARBARA SIEBERT, Adm'x of the Estate of Robert W. Siebert, Deceased, Plaintiff-Appellant, v. CONTINENTAL OIL COMPANY, INC., Defendant-Appellee (Dayco Corporation *et al.*, Defendants).

First District (2nd Division)   No. 86—2659

Opinion filed September 29, 1987.

Michael J. McArdle, Chartered, of Chicago (Corey E. Meyer and Michael J. McArdle, of counsel), for appellant.

Rooks, Pitts & Poust, of Chicago (Ian M. Sherman, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

This action was brought in four counts by plaintiff Barbara Siebert, as administratrix of the estate of Robert W. Siebert (Siebert), against several defendants, including Conoco, Inc., formerly Continental Oil Company (Conoco), for Siebert's alleged wrongful death, which occurred on January 24, 1979. On August 26, 1986, the trial court awarded summary judgment on the third and fourth counts as to Conoco, which served to dismiss it from the action, and made a specific finding of finality pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)). On September 24, 1986, plaintiff moved to vacate the judgment and for leave to file a fourth amended complaint and certain affidavits of Barbara Siebert and Robert Siebert, Jr., but both motions were denied by the trial court. The plaintiff appeals the aforesaid order. The other defendants are not parties to this appeal.

From the early 1960s until his death, Siebert managed a gasoline service station in Evergreen Park, Illinois (hereinafter referred to as Fas Gas), for Conoco. In February 1976 Conoco converted the facility from a full-service station to a self-service operation. At that time, it designed and reconstructed the building itself, an important part of which conversion consisted of its installing six Tolkheim gasoline

pumps. Approximately six months prior to Siebert's death, Alan Brevitz, an employee of Conoco and district supervisor of Fas Gas for the Chicago area, whose duties included the making of monthly safety inspections of his employer's service stations, replaced the number 6 dispenser at the Fas Gas station. The last inspection he conducted at the Evergreen Park facility before the incident was in December 1978, at which time he detected no safety violations.

On January 1, 1979, Conoco entered into a lease arrangement with Kayo Oil Company (Kayo), a subsidiary of Conoco, whereby Kayo took over the operation and control of the Fas Gas station, and also at which time Siebert and other Conoco employees became employees of Kayo.

On January 24, 1979, while in the course of his employment with Kayo, Siebert became soaked with gasoline as a result of a tear in the number 6 dispenser hose at its point of connection with the dispensing unit. Thereupon he apparently entered the bathroom to remove his gasoline-drenched clothes, during which time a fire started somehow and burned Siebert over most of his body. He died shortly thereafter.

Accordingly to the plaintiff's expert witness, Marvin Salzenstein, who examined the gasoline hose in question, the defect consisted of a split which was hidden by a coupling on the hose in such a way that an individual examining it would have been unable to visually discover the tear. Salzenstein and Conoco's expert theorized in their depositions as to how the fire was ignited and reached different conclusions. Salzenstein stated that he believed that ignition was caused either by the exhaust fan in the bathroom or by static electricity created when Siebert was removing his gasoline-soaked clothes. John Hojek, chief of the Evergreen Park fire department, opined that Siebert ignited the fire by attempting to light a cigarette with his butane lighter.

The third count of the third amended complaint sounds in negligence and alleges that Conoco owned and operated Fas Gas and was

"careless or negligent in one or more of the following ways:

(a) Failed to maintain fire extinguishers when they knew or should have known that fire was likely to occur, in violation of Ill. Rev. Stat., Ch. 127½, sec. 9; Ill. Administrative Code, Ch. I, secs. 170.145(b), 170.150(d)(8);

(b) Failed to install automatic fire extinguishing or sprinkler equipment when they knew or should have known that fire was likely to occur;

(c) Failed to test or inspect gasoline pumps and hoses, in violation of Ill. Rev. Stat., Ch. 127½, sec. 9;

(d) Failed to install explosion proof electrical system when they knew or should have known that explosion and fire was likely to occur;

(e) Failed to adequately employ ventilating equipment when they knew or should have known that explosive fumes were likely to collect;

(f) Installed a self-service gasoline retail operation without safety shut-off devices to prevent spillage and spray of gasoline;

(g) Failed to instruct or warn plaintiff's decedent in the dangers of self-service retail gasoline operation."

In his order of August 26, 1986, the trial judge granted Conoco summary judgment because he believed that the plaintiff did not have a valid cause of action for negligence. On September 24, 1986, as noted above, the plaintiff moved to vacate the order of August 26, 1986, and to amend the complaint. The effect of the proposed fourth amended complaint would have been to allege that Conoco was negligent for the same actions and omissions complained of in the third amended complaint, but this time in its role as designer and builder of the Fas Gas station, as contrasted with that of owner and operator.

The trial judge explained his denial of the plaintiff's motions as follows:

"First of all, a motion to vacate a final judgment cannot be based on a request for leave to amend the complaint. I mean, that's just improper post-judgment relief unless, of course, the motion to amend the complaint is by reason of an allegation that you wish to conform to pleadings to prove [sic].

And this was summary judgment. The amended complaint is totally changed, the theory upon which the plaintiff seeks recovery against the defendant Continental."

OPINION

The question of whether the plaintiff should have been allowed to amend his complaint depends upon the amendment to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005), which was effective September 14, 1985. The revision added the following: "Before or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(g).

■ Consequently, we confront the same situation this court was presented with in *Ruff v. Northwestern Memorial Hospital* (1987), 159 Ill. App. 3d 811. In *Ruff*, as in the case at bar, the trial judge

declared that he was unable to permit amendment of the complaint after he granted summary judgment. However, since the amendment of section 2—1005(g), which occurred before the circuit court's decision in *Ruff*, trial judges clearly have possessed the power to allow amendments after summary judgment was granted. (Ill. Ann. Stat., ch. 110, par. 2—1005(g), Historical and Practice Notes, at 21 (Smith-Hurd Supp. 1987).) Moreover, based on section 2—616 (Ill. Rev. Stat. 1985, ch. 110, par. 2—616), our courts appear to have had this authority even prior to the amendment to section 2—1005. (See *Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 437 N.E.2d 774.) Accordingly, in *Ruff* we reversed the trial court.

Having established that the trial court has the authority to allow amendments to the complaint, the question next becomes what standards the court "shall" use in arriving at its decision as to whether or not the amendment should be permitted. The "just and reasonable" terms of section 2—1005(g) mirror the language used in section 2—616(a) (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(a)), which has been interpreted as requiring the trial court to permit amendment if it will further the ends of justice. *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 303, 484 N.E.2d 841; *First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 396, 384 N.E.2d 30.

■ In *Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 437 N.E.2d 774, the circuit court allowed the plaintiff's motion for summary judgment as to the third count of the defendant's counterclaim, after which the defendant moved to vacate the dismissal and to amend her counterclaim. (107 Ill. App. 3d 373, 375, 437 N.E.2d 774.) Her motions were denied, but this court held that the trial court should have permitted the defendant to amend, and we believe the same relief should obtain in the instant case. Although *Kupianen* is a case prior to the amendment of section 2—1005, the court held the defendant had a right to amend her counterclaim, evidently because of section 2—616. The court in *Kupianen* delineated the relevant factors which should be considered in deciding whether the trial court properly exercised its discretion in denying amendment of the counterclaim: "whether the proposed amendment would cure the defective pleading [citation]; whether other parties would sustain prejudice or surprise by virtue of the proposed amendment [citations]; the timeliness of the proposed amendment [citation]; and whether previous opportunities to amend the pleadings could be identified. [Citation.]" 107 Ill. App. 3d 373, 377, 437 N.E.2d 774.

In the case at bar, the amendment would cure the defective plead-

ing, for the plaintiff would be charging Conoco with negligence as the builder and designer of the facility and not in its capacity as owner and operator. Construing the pleadings and the depositions in the light most favorable to the plaintiff, she pleads a claim against Conoco for its negligence in designing and building Fas Gas, thus the fourth amended complaint would rectify the defect of the previous complaint. For example, the source of ignition is an unresolved question of fact and it might have been the exhaust fan, a feature for which a builder could be legally responsible.

The next two elements in the test were addressed by this court in *Kupianen* in a statement which is applicable to the case at bar: "No prejudice or surprise could have resulted to the other parties since the case was still at the pleading stage. The proposed amendment was presented to the trial court at the time the motion to vacate was heard." (107 Ill. App. 3d 373, 377, 437 N.E.2d 774.) The court in *Kupianen*, having decided the first three components of the analysis in favor of allowing amendment of the counterclaim, did not apply the final factor when reaching its conclusion that the attempted amendment to the counterclaim should have been permitted. We adopt the same approach. Despite the plaintiff's having had previous opportunities in the case *sub judice* to amend the complaint, the only just and reasonable approach now is to allow the plaintiff to amend the complaint.

Accordingly, under the circumstances of this case it appears that had the trial court been aware of its authority to allow amendment of the complaint, it would have permitted the plaintiff to do so. Hence, the trial court's order granting summary judgment is vacated and the plaintiff's motion to amend the complaint should be granted. In view of our holding, the question of whether the circuit court should have allowed additional affidavits is moot; therefore, the plaintiff's motion to file those affidavits should be denied.

Reversed in part, vacated in part, and remanded.

HARTMAN and BILANDIC, JJ., concur.