SOPHIA CROSS, Plaintiff-Appellant, v. AINSWORTH SEED COMPANY *et al.*, Defendants-Appellees (Robert Hubner *et al.*, Counterplaintiffs; De Kalb Pfizer Genetics, Intervenor and Counterdefendant-Appellee; Clayton R. Ainsworth, Counterdefendant; Ainsworth Seed Company *et al.*, Third-Party Plaintiffs; Pfizer Genetics, Inc., Third-Party Defendant-Appellee).

Fourth District No. 4—89—0607

Opinion filed May 9, 1990.

Donald K. Birner, of Pekin, for appellant.

Steven B. Morgan, of Perbix & Morgan, of Havana, and James E. McCabe, of Williamsport, Indiana, for appellees Robert Hubner and Jim Hubner.

Gregory A. Cerulo, Mary W. McDade, and David G. Wentz, all of Quinn, Johnston, Henderson & Pretorius, of Peoria, for appellee Pfizer Genetics, Inc.

Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, Rex K. Linder, and Nicholas J. Bertschy, of counsel), for appellee De Kalb Pfizer Genetics.

William L. Hatch and Arnold F. Blockman, both of Hatch, Blockman, McPheters, Fehrenbacher & Lyke, of Champaign, for appellees Ainsworth Seed Co., Edward Nunn, and Frank Short.

JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiff brought this action to recover damages for claims alleging primarily products liability and negligence of defendants in de-

signing, assembling, installing, or constructing a conveyer-belt system which resulted in personal injury to plaintiff.

After extensive discovery, defendants filed motions for summary judgment asserting the statute of repose of section 13—214(b) of the Code of Civil Procedure (Code) as an affirmative defense. (Ill. Rev. Stat. 1987, ch. 110, par. 13—214(b).) The trial court granted defendants' motions and entered judgment in favor of defendants and against plaintiff on count V of plaintiff's original complaint and on counts VI, VII, and VIII of plaintiff's revised amended complaint. Plaintiff then filed a request for leave to amend her complaint which the trial court denied as untimely.

On September 27, 1985, plaintiff's scalp was ripped from her head when her hair was caught in the unguarded driveshaft of a sorting conveyer belt located at the De Kalb Pfizer Genetics plant in Mason City, Illinois.

On May 1, 1986, plaintiff filed a complaint against Ainsworth Seed Company (Ainsworth), New London Engineering, and New Idea Corporation. Various counts of plaintiff's complaint arose out of the above-described incident and were based on products liability and negligence. In her complaint against Ainsworth, plaintiff alleged that sometime prior to September 27, 1985, Ainsworth designed, manufactured, sold, and installed at the premises of De Kalb Pfizer Company (De Kalb), or its successor, certain conveyer belts, assembly gearing, and corn huskers, which were affixed to the floor of the premises. Ainsworth filed its answer on June 2, 1986, alleging no affirmative defense.

On December 2, 1986, De Kalb filed a petition to intervene to protect its workers' compensation lien. De Kalb's intervention was granted by the trial court on December 15, 1986.

On June 26, 1987, plaintiff filed a revised amended complaint against the three original defendants and Clayton R. Ainsworth (Clayton), Edmund Nunn (Nunn), Frank Short (Short), Cigna Companies, De Kalb, Robert Hubner (Robert) (doing business as Hubner Erection), and Kee Conveyers, Inc. The counts against Clayton, Nunn, and Short alleged that they designed, assembled, installed, or constructed for Ainsworth or its successors certain conveyer-belt assembly and gearing which were affixed to the floor. The revised complaint further alleged that plaintiff was injured as a result of the negligence of the defendants in the design, manufacture, and installation of the conveyer system. On August 11, 1987, Clayton, Nunn, and Short filed an answer, but alleged no affirmative defense.

On September 21, 1987, plaintiff filed another count against

James Hubner (James). On October 23, 1987, James and Robert filed their answer and a counterclaim for contribution against De Kalb and Clayton.

On April 22, 1988, Ainsworth, Clayton, Nunn, and Short filed a motion for summary judgment alleging that plaintiff's cause of action was barred by section 13—214(b) of the Code in that, prior to the filing of her complaint, more than 10 years had elapsed since the defendants had anything to do with the design, planning, supervision, observation, or management of construction of the improvement to real property. In support of the summary judgment motion, defendants filed several affidavits. The affidavits stated that none of the individuals after 1972 had anything to do with the design, planning, supervision, observation, management, or construction of the conveyer belt and assembly gearing which were affixed to the floor, that no other employee of Ainsworth had anything to do with the improvement to the premises after 1972, and that after 1972, the premises in question were not owned, occupied, or controlled by Ainsworth.

On May 11, 1988, Robert and James filed their motion for summary judgment also asserting, as an affirmative defense, the statute of repose. Affidavits of James and Robert were incorporated into the motion. Subsequently, plaintiff filed motions to strike the affidavits of the defendants in support of their motion for summary judgment.

On June 3, 1988, and June 12, 1988, plaintiff filed a response to James and Robert's motion for summary judgment and a response to Ainsworth's motion for summary judgment. Plaintiff attached to her response affidavits and exhibits in opposition to the summary judgment motions, including excerpts from Clayton's deposition, excerpts from Nunn's deposition, excerpts from Tom Ainsworth's deposition, excerpts from Howard Lockenour's deposition, excerpts from Robert's deposition, excerpts from James' deposition, an affidavit and pictures of Duane Snyder (Snyder), an affidavit of Robert Pietrzak (Pietrzak), and Ainsworth's depreciation schedule.

On June 3, 1988, James and Robert filed more excerpts from various depositions in support of their summary judgment motions. On June 3, 1988, plaintiff filed a supplemental response to the summary judgment motions of the defendants.

On June 10, 1988, James and Robert filed a reply to plaintiff's response to their summary judgment motion. On June 10, 1988, Clayton, Nunn, Short, and Ainsworth filed a memorandum in support of their motion for summary judgment. On June 10, 1988, defendants filed the supplemental affidavits of Clayton and Short.

Clayton's supplemental affidavit stated that in 1969 the sorting

building where the plaintiff was injured was constructed and that conveyors and husking beds were installed in the building for the purpose of sorting seed corn. The affidavit also indicated that Ainsworth was incorporated in 1972 and never had anything to do with the sorting building in question.

On May 13, 1988, Clayton, Nunn, Short, and Ainsworth filed a motion for leave of court to file a counterclaim for contribution against De Kalb and a third-party complaint for contribution against Pfizer Genetics, Inc. (Pfizer). On June 16, 1988, defendants' counterclaim and third-party complaint were filed. On June 16, 1988, defendants filed their first affirmative defense to plaintiff's complaints based upon the statute of repose.

On June 23, 1988, Judge Lipe denied all of the defendants' motions for summary judgment, finding that section 13—214(b) of the Code did not bar plaintiff's claim. On August 1, 1988, defendants filed a motion to reconsider the denial of the summary judgment motions of Ainsworth, Clayton, Nunn, and Short.

On August 1, 1988, counterdefendant De Kalb filed a motion for summary judgment, alleging the same statute of repose defense as asserted by defendants.

On August 5, 1988, and August 25, 1988, third-party defendant Pfizer filed a motion for change of venue from Judge Lipe, alleging prejudice on his part. The motion was denied at a hearing on August 9, 1988. Additionally, on August 9, 1988, Judge Lipe entered a second-amended order regarding the defendants' summary judgment motions. In that order, the judge denied defendants' summary judgment motions regarding the statute of repose, specifically finding that "section 13—214(b) shall not be applied retroactively to any act or omissions occurring prior to the effective date of the statute."

On August 16, 1988, Pfizer filed a motion to reconsider change of venue.

On August 18, 1988, Judge Lipe entered an order denying defendants' motion for an interlocutory appeal from the denial of their motions for summary judgment on their affirmative defense dealing with the statute of repose.

On August 29, 1988, Judge Lipe entered an order granting third-party defendant Pfizer's motion to reconsider the change of venue and recused himself from the case, finding that, "[a]ll rulings on or after August 9, 1988, as announced from the bench are vacated. All rulings entered in writing on or after August 9, 1988, are hereby vacated." On September 1, 1988, plaintiff filed a motion to reconsider the court's order for change of venue. That motion was denied by the

court on September 2, 1988.

On September 7, 1988, Judge Fred W. Reither was assigned the case. On October 31, 1988, Robert and James filed a motion for change of venue from Judge Reither, alleging prejudice on the part of the judge. On November 1, 1988, the motion for change of venue was allowed by Judge Reither.

On November 16, 1988, the case was assigned to Judge Carson D. Klitz.

On January 19, 1989, defendants sent a notice of hearing on defendants' motion to reconsider the denial of their summary judgment motions before Judge Klitz. On February 10, 1989, counterdefendant De Kalb filed additional authority in support of its motions for summary judgment, which included the statute-of-repose issue asserted by defendants. On February 22, 1989, third-party defendant Pfizer filed a motion for summary judgment, also asserting the statute-of-repose defense brought by defendants.

On February 17, 1989, plaintiff filed a motion to amend her complaint by adding an additional defendant, Pfizer, and by amending count VII of her complaint pertaining to Nunn.

On February 23, 1989, the court orally granted defendants' summary judgment motions on the statute-of-repose defense.

On February 27, 1989, plaintiff filed a reply to De Kalb's motion for summary judgment and Ainsworth's motion for reconsideration. To this reply, plaintiff attached Pietrzak's affidavit, Ainsworth's depreciation schedule, the appraisal report of Trojan Seed of Illinois, excerpts from Robert's deposition, Snyder's affidavit, and excerpts from the deposition of Barry A. Miller.

On February 28, 1989, defendants filed a motion for a finding under Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), praying that there was no just reason for delaying the enforcement or appeal of the counts under which the defendants obtained summary judgment.

On March 10, 1989, plaintiff filed an amended supplemental complaint against Nunn and Pfizer, and a motion to amend the supplemental complaint.

On July 13, 1989, Judge Klitz entered a written order granting the defendants' motions for summary judgment and entering judgment in favor of defendants, Ainsworth, Clayton, Nunn, and Short, and against the plaintiff. The court granted the judgments based on defendants' first affirmative defense and found that the plaintiff's cause was barred by section 13—214(b) of the Code. The summary judgments were granted in favor of defendants and against the plaintiff on count V of plaintiff's original complaint and on counts VI, VII,

and VIII of plaintiff's revised amended complaint. The court also granted plaintiff's motion to file an amended supplemental complaint for count VII as to Nunn, but not as to Pfizer.

## I. THE MOTION FOR SUMMARY JUDGMENT

On appeal, plaintiff contends that the trial court erred in granting defendants' motions for summary judgment. Plaintiff argues that there were genuine issues as to material facts because defendants contradicted themselves. Defendants respond that the granting of their motions for summary judgment was proper because there were no issues of material fact.

■ A motion for summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits or exhibits, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 247, 423 N.E.2d 1170, 1174.) Even though a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits or other appropriate supporting documents, summary judgment should be granted. *Lawrence v. Rubio* (1980), 85 Ill. App. 3d 472, 476, 406 N.E.2d 946, 951.

### A. THE AFFIRMATIVE DEFENSE OF THE STATUTE OF REPOSE

Plaintiff's first argument on appeal is that the trial court erred in considering the affirmative defense of the statute of repose (Ill. Rev. Stat. 1987, ch. 110, par. 13—214(b)) when defendants failed to raise it in their answers. This issue is important because it is potentially dispositive of many of the other issues raised by plaintiff. If the affirmative defense of the statute of repose is required to be raised in defendants' answers, amended answers, or motions under sections 2—615 or 2—619 of the Code (Ill. Rev. Stat. 1987, ch. 110, pars. 2—615, 2—619), as opposed to its being raised in a motion for summary judgment, the statute-of-repose defense should not have been considered at the summary judgment hearings.

Section 2—613(d) of the Code states:

> "(d) The facts constituting any affirmative defense, such as payment, release, satisfaction, discharge, license, fraud, duress, estoppel, laches, statute of frauds, illegality, that the negligence of a complaining party contributed in whole or in part to the injury of which he complains, that an instrument or transaction is either void or voidable in point of law, or cannot be recov-

ered upon by reason of any statute or by reason of nondelivery, want or failure of consideration in whole or in part, and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint, counterclaim, or third-party complaint, in whole or in part, and any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply." Ill. Rev. Stat. 1987, ch. 110, par. 2—613(d).

■ The statute of repose is one such affirmative defense. (*Elliott v. Sears, Roebuck & Co.* (1988), 173 Ill. App. 3d 383, 527 N.E.2d 574.) Section 2—613, however, is designed to prevent unfair surprise at trial and is not meant to be a restriction on motions for summary judgment. (*Chaplin v. Geiser* (1979), 79 Ill. App. 3d 435, 438, 398 N.E.2d 628, 631.) As noted in *Chaplin*, several cases have held that a trial court may consider an affirmative defense raised in a motion for summary judgment even if the defense was not raised in the answer. See *Chaplin*, 79 Ill. App. 3d at 438, 398 N.E.2d at 631.

Even though the original answers filed by defendants did not contain any affirmative defenses, on June 16, 1988, Nunn, Short, Ainsworth, and Clayton did file their first affirmative defense based on the statute of repose. The trial court was thus correct in considering this defense in its review of defendants' motions for summary judgment.

### B. SECTION 13—214 IS CONSTITUTIONAL

■ Plaintiff next argues that section 13—214 of the Code is unconstitutional as applied and on its face. Specifically, plaintiff contends that section 13—214 is unconstitutional special legislation and is violative of the due process and equal protection clauses of the United States Constitution (U.S. Const., amend. XIV).

We note, however, that the constitutionality of section 13—214 of the Code has already been determined. See *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 500 N.E.2d 34 (section 13—214(a) not unconstitutional special legislation under the Illinois Constitution); *Matayka v. Melia* (1983), 119 Ill. App. 3d 221, 456 N.E.2d 353 (section 13—214 not violative of the Federal or State due process clause and not special legislation); *Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 483 N.E.2d 613 (section 13—214(a) not violative of the Federal equal protection clause and not special legislation); *Blackwood*

*v. Rusk* (1986), 148 Ill. App. 3d 868, 500 N.E.2d 69 (section 13—214 not violative of the equal protection clause and not special legislation); *Continental Insurance Co. v. Walsh Construction Co.* (1988), 171 Ill. App. 3d 135, 524 N.E.2d 1131 (section 13—214 not violative of the equal protection clause); *People ex rel. Skinner v. FGM, Inc.* (1988), 166 Ill. App. 3d 802, 520 N.E.2d 1024 (section 13—214 not special legislation under the Illinois Constitution).

### C. SECTION 13—214 IS APPLICABLE

#### 1. SECTION 13—214(b) IS RETROACTIVE

 Plaintiff argues that section 13—214(b) of the Code should not be applied retroactively to deprive her of a remedy. Defendants argue that four recent cases hold to the opposite effect and specifically reject plaintiff's argument. A short summary of these cases follows.

In *Blackwood*, the court stated:

"Defendants further argue that section 13—214 cannot be construed to operate retroactively.

We disagree with defendants' contention. As heretofore noted, the legislature, on September 16, 1981, reenacted the 1979 act (Ill. Rev. Stat., 1980 Supp., ch. 83, pars. 22.3(a), (b)), but without the language which provided, 'The limitations of this Section shall apply to all acts or omissions which occur on or after the effective date of this amendatory act of 1979.' The omission of this language broadened the applicability of the 1979 statute so that it would within its parameters apply to actions based on tort or contract and arising out of negligent design, planning, construction, etc., of buildings which occurred prior to November 29, 1979, as well as to those which occurred subsequent to this date. *Champaign County Nursing Home v. Petry Roofing* (1983), 117 Ill. App. 3d 76, 452 N.E.2d 847." *Blackwood*, 148 Ill. App. 3d at 872-73, 500 N.E.2d at 72.

Other opinions have also addressed plaintiff's argument and are helpful in disposing of it. In *Champaign County Nursing Home v. Petry Roofing, Inc.* (1983), 117 Ill. App. 3d 76, 78, 452 N.E.2d 847, 849-50, this court discussed the history of section 13—214 of the Code, specifically noting that the section was originally enacted in 1979 with a saving clause stating, " 'The limitations of this Section shall apply to all acts or omissions which occur on or after the effective date of this amendatory Act of 1979.' (Ill. Rev. Stat., 1980 Supp., ch. 83, par. 22.3(e).)" (*Champaign County Nursing Home*, 117 Ill. App. 3d at 78, 452 N.E.2d at 849.) On July 13, 1982, section 13—214 was reenacted

without the saving clause. This court quoted from the legislative debates and concluded that the legislative intent behind the deletion of the saving clause was that the statute be given retroactive effect and act as a bar to actions premised on defects in design and construction before 1979. See also *People ex rel. Skinner v. Graham* (1988), 170 Ill. App. 3d 417, 524 N.E.2d 642 (lack-of-retroactivity argument specifically dealing with section 13—214(a) rejected).

Even more recently, in *Erdie v. Central Illinois Public Service Co.* (1988), 175 Ill. App. 3d 1050, 1054-55, 530 N.E.2d 514, 518, this court rejected the lack-of-retroactivity argument dealing with both the products liability statute of repose of section 13—213 of the Code and the construction statute of repose of section 13—214, and stated as follows:

"Plaintiffs argue their interpretation of *Costello* should apply to section 13—214. We have already declined to apply their interpretation to section 13—213, and we similarly decline to apply it to section 13—214. Section 13—214, which became effective November 29, 1979, by Public Act 81—1169 (Ill. Rev. Stat. 1985, ch. 110, par. 13—214 (formerly Ill. Rev. Stat., 1980 Supp., ch. 83, par. 22.3); 1979 Ill. Laws 4479, 4480 (§1)), is to be given retroactive effect." *Erdie*, 175 Ill. App. 3d at 1055, 530 N.E.2d at 518.

Based on the above cases, section 13—214(b) of the Code is to be applied retroactively.

### 2. THE CONVEYER IS AN IMPROVEMENT TO REAL PROPERTY

■ Plaintiff argues that the conveyer belt and assembly gearing in question are not improvements to real property, but instead they are "products," which are not covered by the provisions of the statute of repose in section 13—214 of the Code. We disagree.

Section 13—214 of the Code states in pertinent part:

"(a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of *an improvement to real property* shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission. ***

(b) No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of *an improvement to*

*real property* after 10 years have elapsed from the time of such act or omission. \*\*\*

\* \* \*

(e) The limitations of this Section shall not apply to causes of action arising out of fraudulent misrepresentations or to fraudulent concealment of causes of action." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 110, pars. 13—214(a), (b), (e).)

Thus, in order for section 13—214 to apply in the instant case, the installation, assembly, and construction of the conveyer-belt system must be the "construction of an improvement to real property."

The case closest on point is from the Seventh Circuit Court of Appeals, *Hilliard v. Lummus Co.* (7th Cir. 1987), 834 F.2d 1352, where the issue was whether, under Illinois law, a screw conveyor that moved cocoa through a plant was an "improvement to real property" for the application of section 13—214(b) of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 13—214(b)). In *Hilliard,* the plaintiff argued in the trial court that Lummus had not improved real property, but had merely provided a product that was installed on real property. The district court disagreed and held that the screw conveyor substantially enhanced the value of the property and constituted an "improvement to real property." (*Hilliard,* 834 F.2d at 1354.) The Seventh Circuit affirmed.

The *Hilliard* court first noted that whether work on a screw conveyor constituted an "improvement to real property" within the context of section 13—214(b) of the Code is an issue of law for the court. (*Hilliard,* 834 F.2d at 1354.) The court cited approvingly *Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 483 N.E.2d 613, which held that words are to be given their commonly accepted meaning, and that an improvement to real property is something which substantially enhances the value of the property and is more than a repair or replacement. (*Hilliard,* 834 F.2d at 1354.) The court also cited the following definition of improvement:

" 'A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.' " (*Hilliard,* 834 F.2d at 1354 n.3, quoting Black's Law Dictionary 682 (5th ed. 1979).)

The *Hilliard* court rejected plaintiff's argument that the case merely involved a piece of machinery installed in a building that could easily be removed without damage and stated the following:

" 'That the conveyor is more than a mere repair or replacement is beyond dispute. The uncontested deposition testimony establishes that the conveyor was installed in about 1950 along with the construction of the building and has remained there ever since. The conveyor was not a repair to or a replacement of anything that previously existed. Furthermore, we do not think that it can seriously be doubted that the conveyor substantially enhanced the value of the property. The plant is designed to produce processed cocoa, and the conveyor was built as an integral component of that process.' " (*Hilliard*, 834 F.2d at 1355.)

The court also rejected plaintiff's argument that since the conveyor was not bolted or welded to the steel supports and is not a fixture, section 13—214 of the Code should not apply:

"We disagree. As we explained above, the words of a statute are to be given their common ordinary meaning unless the statute indicates otherwise. Nothing in §13—214 indicates that it intended the peculiar definitions of fixture law to apply to that section ***. If Hilliard's argument is intended to raise an issue as to the conveyor's permanence, we must disagree. Taken to its logical conclusion, Hilliard's argument would mean that nothing could be considered an 'improvement to real property' if there were any possibility that the structure might be redesigned or rebuilt at any time, no matter how far into the future. We do not think this is a reasonable interpretation of the statutory language." (*Hilliard*, 834 F.2d at 1355.)

The court also stated that the relevant inquiry should focus on the entire work or system completed by Lummus and not simply on a single component that may have been involved in the plaintiff's injury.

In interpreting section 13—214 of the Code, the *Hilliard* court followed the generally accepted approach in other States with similar statutes of repose. See *Cudahy Co. v. Ragnar Benson, Inc.* (D. Colo. 1981), 514 F. Supp. 1212; *Adair v. Koppers Co.* (N.D. Ohio 1982), 541 F. Supp. 1120; *Mullis v. Southern Co. Services, Inc.* (1982), 250 Ga. 90, 296 S.E.2d 579; *Anderson v. M.W. Kellogg Co.* (Colo. 1988), 766 P.2d 637; *McCormick v. Columbus Conveyer Co.* (1989), ___ Pa. ___, 564 A.2d 907.

We hold that the belt conveyor and assembly gearing in question in the present case were an improvement to real property under section 13—214(b) of the Code as a matter of law. We note that the conveyor system in question was installed by Clayton, Short, and Nunn in 1969 and was not a repair or replacement of an existing conveyor

system. Accordingly, this is not a case of mere repair or replacement. Also, the belt conveyor system that was installed at the sorting building in 1969 was a substantially new addition to that building and included corn huskers, a husking bed, a belt sorting conveyor, and a reject conveyor. Thus, the conveyor system and the overall work completed at the sorting building in 1969 was a substantial improvement to the real property. Finally, the sorting building was erected in 1969, the same year that the conveyor system was placed in the sorting building. The sole reason for the existence of the sorting building is to sort corn. The belt conveyor that allegedly caused the plaintiff's injury was an integral and essential part of that corn-sorting system.

We find *Hilliard* persuasive, especially when read in conjunction with similar cases from other States, and we hold that the conveyor at issue is an improvement to real property within the meaning of section 13—214 of the Code.

### D. NO GENUINE ISSUES OF MATERIAL FACT

■■ Plaintiff argues that the trial court erred in granting defendants' motion for summary judgment because genuine issues of material fact exist on the record. Specifically, plaintiff alleges that inconsistencies exist between affidavits and answers to requests to admit facts. However, careful review of the record before this court shows plaintiff's argument to be without merit.

In support of his summary judgment motion, Nunn filed an affidavit stating that after 1972 he had nothing to do with the design, planning, supervision, observation, management of construction, or construction of the conveyor belt and assembly gearing which were affixed to the floor of the premises. His affidavit also said that after 1972 no other employee of Ainsworth had anything to do with said improvement to the premises, and that the premises in question were not owned, occupied, or controlled by Ainsworth. In an answer to a request to admit, Nunn stated, "I admit that when I was an employee of Pfizer in 1978, I helped remove almost everything from the sorting building."

As to the above-described documents, we find no issue of material fact. First, the two documents are not contradictory. In Nunn's answer, Nunn stated that he *took out* the entire conveyor from the building in 1978. He also stated that he was not involved in designing, planning, supervising or managing construction after 1972. In his affidavit, Nunn stated that he did not design, *plan, supervise, observe, manage construction, or construct* the conveyer belt or assembly gearing. In addition, the affidavit concerns Nunn's employment by

Ainsworth only through 1972. Second, the answer to the request to admit was never presented by the plaintiff to the court during the hearings on the summary judgment motions. In addition, no counter-affidavits were filed by plaintiff to contradict Nunn's affidavit. Accordingly, because Nunn's original affidavit was never contradicted, the facts contained in that affidavit must be accepted as true at the hearing on the motion for summary judgment. In order to create an issue of fact, plaintiff must file counteraffidavits. *Smith v. South Shore Hospital* (1989), 187 Ill. App. 3d 847, 543 N.E.2d 868.

## II. LEAVE TO AMEND PLAINTIFF'S COMPLAINT

Plaintiff also argues on appeal that the trial court erred in denying her motion for leave to file an amended complaint as untimely. Third-party defendant Pfizer argues that the trial court acted appropriately in denying plaintiff's motion because it was untimely. Pfizer points out that plaintiff's motion was filed after the trial court orally granted summary judgment and after the applicable statute of limitations had run. Pfizer also argues that plaintiff had earlier opportunities to file her amended complaint.

Section 2—616(a) of the Code provides that amendments may be allowed on just and reasonable terms at any time prior to final judgment. (Ill. Rev. Stat. 1987, ch. 110, par. 2—616(a).) Although the policy adopted by the Illinois courts is one of liberality in allowing amendments, parties do not have an absolute or unlimited right to amend. (*Montgomery Ward & Co.* (1981), 98 Ill. App. 3d 243, 250, 423 N.E.2d 1170, 1177.) Permission to file an amended complaint rests within the sound discretion of the trial court, and its decision will not be disturbed on review absent an abuse of that discretion. (*Montgomery*, 98 Ill. App. 3d at 250, 423 N.E.2d at 1177.) A trial court's power to allow amendments should be freely exercised in order that litigants may fully present their causes of action. (*Ryan v. Mobil Oil Corp.* (1987), 157 Ill. App. 3d 1069, 1074, 510 N.E.2d 1162, 1165.) The greatest liberality should be applied in allowing amendments, and the most important question is whether the amendment will be in the furtherance of justice. (*Ryan*, 157 Ill. App. 3d at 1074, 510 N.E.2d at 1165.) In *Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 396 N.E.2d 617, the court discussed these principles as follows:

"[W]hile recognizing that an amendment should not ordinarily be permitted to set up matters of which the pleader had full knowledge at the time of interposing the original pleading and no excuse is presented for not putting its substance in the original pleading, such an amendment will be allowed where justice

is not served by denying leave to amend; doubts should be resolved in favor of allowing amendments. 'The liberal policy of permitting amendments to pleadings is in accord with the salutory principle that controversies ought to be settled on their merits in accord with the substantive rights of the parties.' " *Lawson*, 77 Ill. App. 3d at 845, 396 N.E.2d at 625, quoting *Stevenson v. Maston* (1969), 107 Ill. App. 2d 65, 70, 246 N.E.2d 38, 40.

Section 2—616 of the Code states in pertinent part:

"(c) A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just.

(d) A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) failure to join the person as a defendant was inadvertent; (3) service of summons was in fact had upon the person, his or her agent or partner, as the nature of the defendant made appropriate, even though he or she was served in the wrong capacity of as agent of another, or upon a trustee who has title to but no real power of management or control over property constituting a trust of which the person is a beneficiary; (4) the person, within the time that the action might have been brought or the right asserted against him or her, knew that the original action was pending and that it grew out of a transaction or occurrence involving or concerning him or her; and (5) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery when the condition precedent has in fact been performed, and even though the person was not named originally as a defendant. For the purpose of preserving the cause of action under those conditions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended." Ill. Rev. Stat. 1987, ch. 110, pars. 2—616(c), (d).

■ With regard to Pfizer's argument that the motion for leave to amend the complaint was untimely, section 2—616(c) of the Code provides some guidance. That section allows for amendments to be filed even after judgment in order to conform the pleadings to the proofs. In the present case, plaintiff was merely restructuring her complaint so that she could obtain relief. We note that in *Siebert v. Continental Oil Co.* (1987), 161 Ill. App. 3d 891, 515 N.E.2d 728, the appellate court reversed the trial court and held that the administratrix of an estate should have been permitted to amend her complaint after summary judgment. Citing the seminal case of *Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 437 N.E.2d 774, the court in *Siebert* delineated the relevant factors to be considered in deciding whether the trial court properly exercised its discretion in denying amendment of a complaint or counterclaim:

> " '[W]hether the proposed amendment would cure the defective pleading [citation]; whether other parties would sustain prejudice or surprise by virtue of the proposed amendment [citations]; the timeliness of the proposed amendment [citation]; and whether previous opportunities to amend the pleadings could be identified. [Citation.]' 107 Ill. App. 3d 373, 377, 437 N.E.2d 774." *Siebert*, 161 Ill. App. 3d at 895, 515 N.E.2d at 731.

Plaintiff filed her original complaint within the time period for either a products liability or personal injury action. Plaintiff's proposed amended complaint takes her out of the section 13—214 statute of limitations because she there alleged, as to Pfizer, that it was negligent in modifying the conveyor belt system. Section 2—616(d) of the Code provides for amendments to pleadings to avoid being barred by a statute of limitations if the amendment grew out of the same transaction or occurrence alleged in the original pleading, if the original pleading was filed within the applicable statute of limitations period, and if the defendant to the amendment, within the time period for bringing the action, knew that (1) the original action was pending, and (2) "it grew out of a transaction or occurrence involving or concerning" that defendant. Ill. Rev. Stat. 1987, ch. 110, par. 2—616(d).

The record demonstrates that plaintiff's proposed amended complaint merely incorporated an already named party, Pfizer, into plaintiff's complaint. Pfizer had become a third-party defendant on June 13, 1988, some 2 years and 8½ months after the alleged date of plaintiff's injury. If, as Pfizer contends, the appropriate statutory limitation as to plaintiff's alleged claim is a two-year statute of limitations, plaintiff's action against Pfizer would be barred if Pfizer did not have the required knowledge of plaintiff's claim by September 17, 1987,

the second anniversary of plaintiff's injury. Clearly, Pfizer had that knowledge by June 13, 1988, and, because Pfizer was De Kalb's partner, most likely it had the required knowledge long before that second anniversary. In any event, the circuit court could not properly conclude from the record that a statute of limitations had run on plaintiff's claim against Pfizer.

Finally, the fact that plaintiff failed to give an excuse for the lateness of her request for leave to amend is no reason to deny her request for leave to amend her complaint in this case. Allowing the amendment would not have caused any undue prejudice to or hardship for Pfizer and it might allow plaintiff to obtain some relief. While it is true that plaintiff could have amended her complaint earlier, our recitation of the complicated pleadings in this case demonstrates no dilatory behavior by plaintiff as she proceeded through the pretrial stages of this litigation. On these facts, we conclude that the trial court abused its discretion when it denied plaintiff's leave to amend her complaint. This cause must be remanded for purposes of allowing the filing of the amended complaint against Pfizer.

Affirmed in part; reversed in part and remanded.

LUND and GREEN, JJ., concur.