THIRD DIVISION
 December 30, 1996

No. 1-95-2896

GINGER HOLLADAY,

 Plaintiff-Appellee,

 v.

BRUCE BOYD, M.D.,

 Defendant-Appellant.)
)
)
)
)
)
)
)
)Appeal from the
Circuit Court of
Cook County

90 L 10098

Honorable
John Virgilio,
Judge Presiding.


 JUSTICE CAHILL delivered the opinion of the court:
 Plaintiff filed a complaint against defendant, a
psychiatrist, in June 1990, alleging medical malpractice and
negligent infliction of emotional distress. After trial, a jury
returned a $1,450,000 verdict for plaintiff.
 Defendant argues on appeal that the trial court erred in
denying a motion for a directed verdict based upon the two year 
statute of limitations for medical malpractice. We reverse,
finding the complaint timed barred, and do not address the
remaining arguments by defendant.
 The plaintiff testified at trial, in her case in chief, that
after graduating high school, she sang professionally in Memphis,
Tennessee and studied sociology and music at Memphis State
University. She married in 1971 and divorced in 1975. She then
studied music at Peabody College in Nashville.
 Plaintiff married her second husband in 1978 and moved to
Chicago. She continued to work as a singer in the advertising
business, but grew anxious about her career. She and her husband
were also having marital problems, and so plaintiff decided to
seek professional help. Her first therapy session with
defendant, a licensed psychiatrist, was in 1981. She continued
treatment of two or three sessions a week through 1986. During
this time she divorced her second husband.
 Plaintiff testified that in 1984 or 1985 defendant pulled
her onto his lap during a therapy session. When asked by counsel
what happened after he pulled her onto his lap, plaintiff stated:
"I told him I wasn't five years old anymore. I got back in my
chair. He said I'm glad you realize that." In later sessions
they sat on the floor. She sat between defendant's legs, and
sometimes they kissed. She then testified about a specific
incident with defendant:
 "I took my sweater off and I had like a camisole or
 something on and he began kissing my neck. And I
 remember thinking, God, I've been fantasizing for this,
 you know. I've been fantasizing about this for years. 
 It's finally happening but I don't like it. And I
 didn't know--I didn't know how to stop it."
 Plaintiff testified she had sexual intercourse with
defendant during a therapy session at his office in May 1986. 
Plaintiff then asked defendant: "Does this mean you cannot be my
therapist anymore?" Defendant replied he could still be her
therapist. They had sexual intercourse five or six times at
later sessions in 1986, but not at every session.
 After sex with defendant plaintiff experienced nervousness
and agitation. She would leave his office and walk down twelve
flights of stairs. She also fantasized about punching her arms
through windows and could not go straight home, but walked the
streets. She felt guilty after sex with defendant because she
had a boyfriend.
 Plaintiff said that in the summer of 1986 her performance
anxiety as a singer had not improved. She was creatively
blocked, agitated, and had lost much of her confidence, so she
attended a three-week workshop in Kauai, Hawaii. She then
attended a nine-month workshop in California in October 1986.
 Counsel asked plaintiff why she went to this workshop. She
stated: "At the time I felt desperate. And I thought something
was wrong with me. *** I was confused. I still thought that
there was something wrong with me, that [defendant] couldn't help
me, but maybe somebody else could."
 Plaintiff returned to Chicago in the summer of 1987 and
visited defendant at his office three times. They had sexual
intercourse. Plaintiff did not pay for these visits. She told
defendant she wanted to take their relationship out of the
office, but he did not give her an answer. When counsel asked
what she did after that, she said: "I cried. I cried and I
cried. And then I have to say, it was one of the first times
that I cried in his office. After five years of therapy, I
finally cried."
 Plaintiff moved to California in the summer of 1987. A
friend, Barbara Belanyi, picked her up at the airport. She told
Belanyi of her sexual relationship with defendant. Belanyi told
her the relationship was inappropriate and that she should find
another therapist. Plaintiff then sent defendant a letter
stating she would not see him again and the therapy was over. 
Plaintiff said Belanyi had a degree in psychology and she
respected Belanyi's opinion. Plaintiff then began therapy with
Charles Dillon. She told him in 1987 of her relationship with
defendant. When counsel asked what Dillon said, plaintiff
stated: "He said something like we both must have gotten in
trouble." She told no one other than Dillon and Belanyi that she
had sex with defendant because, she said, "I think I was ashamed
of it. *** I was embarrassed that I had a relationship--a
sexual relationship with my therapist."
 Plaintiff talked with defendant by telephone until the
spring of 1990. She filed this complaint on June 29, 1990. She
stated she has anxiety attacks, nightmares, inability to sleep,
problems with concentration, feelings of guilt and shame, low
self confidence and self-esteem, and uncontrolled emotions.
 Belanyi testified by evidence deposition. She met plaintiff
in the summer of 1986, and they became friends. They attended a
workshop in Kauai in July 1986. Plaintiff then seemed upset,
agitated, anxious, nervous, and under stress. Belanyi also
attended the nine-month workshop with plaintiff in California in
1986. She and plaintiff were good friends and saw each other
daily. Plaintiff was nervous, anxious, and under stress. When
plaintiff returned to California from Chicago in the summer of
1987, Belanyi described her as "flipped out." Belanyi testified:
"[Plaintiff] was very upset, and after some questioning, she
finally relayed that her relationship with Dr. Boyd was more than
she had insinuated." When plaintiff told Belanyi about her
sexual relationship with defendant, Belanyi encouraged her to
"break off" the relationship and told her it was "totally
inappropriate" and that she needed to see another therapist
"immediately." She also "encouraged her to sever any further
conversations with Dr. Boyd." They often spoke about the
relationship and remained close friends.
 Edison DeMello, plaintiff's treating therapist in 1989,
testified that plaintiff suffered from post-traumatic stress
syndrome and depression.
 Ann Thompson, plaintiff's treating therapist in 1991,
testified by evidence deposition that plaintiff was suffering
from post-traumatic stress disorder and panic disorder without
agoraphobia caused by sexual contact with a former therapist.
 Two experts who interviewed plaintiff and reviewed her
records also testified. Dr. Strasburger, a psychiatrist, said
that plaintiff was extremely confused as a result of the sexual
relationship with defendant. Dr. Burstein, a psychologist, said
that in his opinion plaintiff suffered from post-traumatic stress
disorder as a result of the sexual contact with defendant.
 At the close plaintiff's case in chief, defendant moved for
a directed verdict. He argued that the complaint was time barred
because plaintiff knew or reasonably should have known that
defendant's sexual contacts were inappropriate and that she had
been injured by those contacts more than two years before she
filed the action on June 29, 1990.
 The court denied the motion, stating only: "I will just tell
the jury there is no issue--when the complaint was filed, just
decide the liability or non-liability."
 Defendant argues on appeal that the court erred when it
denied the motion for a directed verdict because the evidence
shows as a matter of law that the complaint was timed barred
under the two year statute of limitations applicable to actions
against physicians.
 A verdict should be directed when all the evidence, viewed
in a light most favorable to the opponent, so overwhelmingly
favors the movant that no contrary verdict based on the evidence
could stand. Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d
494, 510, 229 N.E.2d 504 (1967). A directed verdict is improper
where "there is any evidence, together with reasonable inferences
to be drawn therefrom, demonstrating a substantial factual
dispute, or where the assessment of credibility of the witnesses
or the determination regarding conflicting evidence is decisive
to the outcome." Maple v. Gustafson, 151 Ill. 2d 445, 454, 603
N.E.2d 508 (1992). In ruling on a motion for a directed verdict,
the trial court can neither weigh the evidence nor judge the
credibility of witnesses. Maple, 151 Ill. 2d at 453, 603 N.E.2d
508.
 Plaintiff first argues that defendant waived the statute of
limitations defense because he failed to plead it as an
affirmative defense. She cites Goldman v. Walco Tool &
Engineering Co., 243 Ill. App. 3d 981, 614 N.E.2d 42 (1993), in
support of her argument. The Goldman court noted that the
statute of limitations is an affirmative defense which is waived
if not pled.
 Section 2-613(d) of the Code of Civil Procedure (735 ILCS
5/2-613(d) (West 1994)) provides:
 "The facts constituting any affirmative defense
 *** and any ground or defense, whether affirmative or
 not, which, if not expressly stated in the pleading,
 would be likely to take the opposite party by surprise,
 must be plainly set forth in the answer or reply." 735
 ILCS 5/2-613(d) (West 1994).
Section 2-613 is designed to prevent unfair surprise at trial. 
Cross v. Ainsworth Seed Co., 199 Ill. App. 3d 910, 918, 557
N.E.2d 906 (1990). This court has held that a defendant does not
waive the statute of limitations, even though not pled as an
affirmative defense in an answer, where it is raised in a motion
for summary judgment. Rognant v. Palacios, 224 Ill. App. 3d 418,
586 N.E.2d 686 (1991). The court in Rognant held that failure to
plead an affirmative defense in the answer is not necessarily a
waiver under section 2-613(d). Rognant, 224 Ill. App. 3d at 422,
586 N.E.2d 686. The court found no waiver where the plaintiff
had adequate time to respond to defendant's assertion of the
statute of limitations raised in a motion for summary judgment. 
 The defendant in Goldman raised the statute of limitations
for the first time in a post-trial motion. Defendant in this
case first raised the issue in a motion to dismiss the complaint. 
After the motion was denied, the parties conducted discovery, and
defendant again raised the issue in a motion in limine. 
Defendant moved to bar introduction of evidence of the
relationship between plaintiff and defendant after their last
sexual contact in the summer of 1987. The court reserved ruling
on that motion. The trial judge stated he would treat it as a
motion for a directed verdict at the close of plaintiff's case. 
Defendant then filed a motion for a directed verdict, based on
the statute of limitations. Plaintiff filed a response to the
motion.
 Based on the motion to dismiss the complaint, the motion in
limine, and the motion for a directed verdict, plaintiff cannot
claim she was surprised by the statute of limitations defense. 
We believe defendant preserved the issue. See Rognant, 224 Ill.
App. 3d at 422, 586 N.E.2d 686; see also Neaterour v. Holt, 188
Ill. App. 3d 741, 749, 544 N.E.2d 846 (1989).
 The limitation period for plaintiff's action is governed by
section 13-212 of the Code of Civil Procedure which reads: "[N]o
action for damages for injury or death against any physician ***
shall be brought more than 2 years after the date on which the
claimant knew, or through the use of reasonable diligence should
have known, *** of the existence of the injury or death for which
damages are sought ***." 735 ILCS 5/13-212 (West 1992).
 The statute incorporates the "discovery rule" which
postpones the start of the limitations period until the injured
party knows or should have known of his injury and that it was
wrongfully caused. Knox College v. Colotex Corp., 88 Ill. 2d
407, 414, 430 N.E.2d 976 (1981). In Witherell v. Weimer, 85 Ill.
2d 146, 421 N.E.2d 860 (1981), our supreme court explained that
under the discovery rule the statue of limitations in malpractice
actions begins to run "when a person knows or reasonably should
know of his injury and also knows or reasonably should know that
it was wrongfully caused." Witherell, 85 Ill. 2d at 156, 421
N.E.2d 860. 
 If there is a disputed question of fact about when an
injured party knows or reasonably should have known of his injury
and that it was wrongfully caused, it is to be resolved by the
finder of fact. Lipsey v. Michael Reese Hospital, 46 Ill. 2d 32,
262 N.E.2d 450 (1970). Where only one conclusion can be drawn
from the undisputed facts, the question becomes one for the
court. Witherell v. Weimer, 85 Ill. 2d 146, 156, 421 N.E.2d 869.
 Plaintiff argues that defendant was not entitled to a
directed verdict based on the statute of limitations because the
issue of whether plaintiff knew or reasonably should have known
of her injury and that it was wrongfully caused was a question of
fact for the jury. Defendant relies on three cases to rebut
plaintiff's contention.
 In the first case, Hertel v. Sullivan, 261 Ill. App. 3d 156,
633 N.E.2d 36 (1991), the plaintiff alleged she was sexually
abused as an adult from 1983 to 1988 by a priest. Although she
did not allege her memory was suppressed, she maintained she did
not discover the defendant's acts were wrongful until consulting
a therapist in 1991. She also alleged she was not fully aware of
the extent of her injury until 1992, when she was emotionally
capable of taking action to protect herself. But, the evidence
showed that plaintiff suffered depression in 1985 and believed it
was connected with the sexual incidents. She also complained to
the defendant's supervisor in 1986 that she had sustained
physical injuries related to the defendant's treatment of her. 
The court held the action was time barred because it was not
filed within two years after the plaintiff knew or should have
known of the injury and whether it was wrongfully caused.
 In the second case, Franke v. Geyer, 209 Ill. App. 3d 1009,
568 N.E.2d 931 (1991), the court also refused to extend the
statute of limitations period. The plaintiff alleged she knew as
a child that she was abused, but she was not aware of the
connection between her psychological problems and the abuse until
she was 29 years old. She alleged that because of the abuse she
was "in constant dread and apprehension that such acts were about
to occur" and her psychological symptoms began "from the time the
abuse started to the present." The court held as a matter of law
that the plaintiff knew or should have known the defendant's
conduct was actionable when she was 18 years old. The court
concluded that even though the plaintiff may not have discovered
the full extent of her injuries until some 13 or 14 years later,
when she reached majority, she "had sufficient information
concerning her injury and its cause to put her on inquiry as to
whether actionable conduct was involved." Franke, 209 Ill. App.
3d at 1012, 568 N.E.2d 931.
 In the third case cited by defendant, Hawley v. Kenley, 261
Ill. App. 3d 307, 634 N.E.2d 20 (1994), the plaintiff alleged her
grandfather sexually abused her when she was 16 years old and she
did not remember the abuse until she was 24 years old. But, she
stated in a deposition that she "had a general recollection of
being abused by her stepgrandfather dating from the time of the
abuse." The court held that the plaintiff's cause of action was
time barred because she "had knowledge of, or through the use of
reasonable diligence should have discovered, the alleged
childhood sexual abuse and the injury resulting from that abuse
years before she filed her complaint. At the very least, this
knowledge, even if only general, placed the plaintiff 'under an
obligation to inquire further to determine whether an actionable
wrong was committed.'" Hawley, 261 Ill. App. 3d at 311-12, 634
N.E.2d 20 quoting Nolan v. Johns-Manville Asbestos, 85 Ill. 2d
161, 171, 421 N.E.2d 864 (1981).
 Plaintiff argues that these cases "establish only that where
there is no doubt that the plaintiff knew the sexual contact was
wrongful and was also aware of injury resulting from the sexual
contact, the statute of limitations was triggered." Nowhere in
these cases can such an interpretation be found, nor is it a
proper statement of the law. The use of the term "wrongfully
caused" "does not connote knowledge of negligent conduct or
knowledge of the existence of a cause of action." Knox College,
88 Ill. 2d at 416, 430 N.E.2d 976. The knowledge need not be
actual or certain so long as "[a]t some point the injured person
becomes possessed of sufficient information concerning his injury
and its cause to put a reasonable person on inquiry to determine
whether actionable conduct is involved. At that point, under the
discovery rule, the running of the limitations period commences." 
Knox College, 88 Ill. 2d at 416, 430 N.E.2d 976.
 Plaintiff argues her trial testimony shows she did not
"understand that she had been abused by defendant and that the
therapy had been inappropriate" until her treatment with Dr.
DeMello in 1989. We disagree with this summary of plaintiff's
testimony and note that there is no requirement that a plaintiff
must discover the full extent or the consequences of her injuries
before the statute of limitations begins to run. Golla v.
General Motors Corp., 167 Ill. 2d 353, 657 N.E.2d 894 (1995).
 Plaintiff admitted she experienced "extreme" nervousness,
agitation, and guilt after the sexual contacts with defendant. 
She left Chicago in 1986 to attend two workshops because she was
"confused," "desperate," and "agitated." She had lost her
confidence. She believed something was wrong with her, that
defendant could not help her.
 When plaintiff told her friend Belanyi about the
relationship in 1987, Belanyi informed her it was "totally
inappropriate" and she needed to find another therapist. Belanyi
encouraged her to sever the relationship with defendant. 
Plaintiff testified that she respected Belanyi's opinion and that
Belanyi had a degree in psychology. The only response plaintiff
offers to defendant's argument that this evidence clearly shows
plaintiff knew or should have known of her injury and that it was
wrongfully caused by the time she spoke with Belanyi is "that
Belanyi had never practiced psychology and was not licensed." We
find the response unpersuasive regarding plaintiff's state of
mind. Our summary of Illinois law shows that information need
not come from an expert to be sufficient to put a plaintiff on
notice that an injury is "wrongfully caused," even if the injury
is psychological.
 The evidence shows that plaintiff followed Belanyi's advice. 
After Belanyi told plaintiff the relationship was inappropriate
and to find another therapist, plaintiff wrote to defendant that
she was discontinuing therapy with him. She then started therapy
with Charles Dillon. She also told Dillon about the
relationship, and he commented that she and defendant must have
both gotten in trouble.
 Plaintiff fails to show a factual dispute. Most of the
evidence that supports a conclusion that plaintiff had enough
information concerning her injury and its cause to put her on
inquiry about the possibility of actionable conduct comes from
the uncontested testimony of plaintiff about events in 1986 and
1987. There is no allegation of suppressed memory, no testimony
defendant told plaintiff the sexual contact was necessary,
beneficial, or a part of therapy. 
 But, plaintiff argues "there was a continuous and unbroken
course of negligent treatment" through 1990 because plaintiff and
defendant talked over the telephone "and that treatment was so
related as to constitute one continuing wrong." We are not
persuaded by plaintiff's assertion of the continuing negligence
doctrine and attempts to analogize this case to Cunningham v.
Huffman, 154 Ill. 2d 398, 609 N.E.2d 321 (1993). In Cunningham,
the supreme court held the four year medical malpractice statute
of repose (735 ILCS 5/13-212 (West 1994)) was tolled during the
period of an ongoing course of continuous negligent medical
treatment. The evidence here offered by plaintiff's treating
therapists and experts was that her injury was caused by the
sexual contacts with defendant in 1986 and 1987. These contacts
ended in July 1987. There was no evidence that plaintiff's
injury was caused by therapy rendered by telephone after July
1987. We further note that this court has held the continuing
negligence doctrine "tolls the four-year statute of repose but
does not toll the two-year statute of limitations if plaintiff
knows of her injury ***." Johnson v. Core-Vent Corp., 264 Ill.
App. 3d 833, 838-39, 636 N.E.2d 726 (1993). See also Jacobson v.
Natonson, 164 Ill. App. 3d 126, 517 N.E.2d 304 (1987), where the
court stated:
 "Under that doctrine, the four-year repose provision of
 the statute would be tolled during a continuous course
 of treatment for a specific condition, and would
 commence running at the last treatment. At the same
 time, the two year limitation period would commence
 during or after the course of treatment at such time as
 plaintiff discovered that a wrongful injury had been
 inflicted on her." Jacobson, 164 Ill. App. 3d at 132,
 517 N.E.2d 304.
 We find the evidence, when viewed in a light most favorable
to plaintiff, shows that in July 1987, at the latest, plaintiff
was "possessed of sufficient information concerning [her] injury
to determine whether actionable conduct is involved." See Knox
College, 88 Ill. 2d at 416, 430 N.E.2d 976. At that time, the
burden was on the plaintiff to inquire about the existence of a
cause of action and the statute of limitations began to run under
the discovery rule. The complaint, filed in June 1990, is barred
as a matter of law.
 Reversed.
 THEIS and S.M. O'BRIEN, JJ., concur.