942 F.2d 1173
 20 Fed.R.Serv.3d 918, Prod.Liab.Rep. (CCH) P 12,905
 David TODD, by his natural mother and next friend Billie L.
TODD, Plaintiff-Appellant/Cross-Appellee,
v.
MERRELL DOW PHARMACEUTICALS, INCORPORATED,
Defendant-Appellee/Cross-Appellant,
and
Astra Pharmaceutical Products, Incorporated, Defendant-Appellee.
 Nos. 90-1716, 90-1817.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 16, 1991.
Decided Sept. 9, 1991.
Petition to Modify Opinion to conform to Record Granted in
Part Oct. 18, 1991.
 
 Virginia B. Fischer and Gordon B. Dempsey (argued), Sutherlin & Dempsey, Indianapolis, Ind., for plaintiff-appellant.
 John T. Murphy, Ice, Miller, Donadio & Ryan, R. Robert Stommel (argued), Lewis, Bowman, St. Clair & Wager, Indianapolis, Ind., for defendant-appellee Astra Pharmaceutical Products, Inc.
 Bonnie L. Gallivan (argued), Terri A. Czajka, Ralph A. Cohen, John T. Murphy, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant-appellee Merrell Dow Pharmaceuticals, Inc.
 Before BAUER, Chief Judge, and WOOD, Jr. and CUDAHY, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 On behalf of her four-year-old son David Todd, Billie Todd brought suit in the Marion County Superior Court against defendants Merrell Dow Pharmaceuticals, Incorporated (Merrell Dow) and Astra Pharmaceutical Products, Incorporated (Astra). Todd alleges that David suffers chronic respiratory problems as a result of his exposure to Bricanyl--a drug manufactured by Merrell Dow--while he was in the womb. Merrell Dow and Astra petitioned for removal to federal court based upon diversity of citizenship. Despite Todd's objection that she intended to join Dr. Michael Boothe, a non-diverse party, as an additional defendant to this suit, the district court allowed removal. After limiting discovery to the threshold issue of causation, the district court granted summary judgment for defendants on the grounds that Todd had failed to adduce any evidence establishing a causal link between the administration of Bricanyl and David's alleged injuries. On appeal, Todd contests the district court's exercise of jurisdiction as well as its entry of summary judgment.
 
 I.
 
 2
 Shortly after midnight on July 4, 1986, Billie Todd, who was 28 weeks pregnant with David Todd, was admitted to Hancock Memorial Hospital in Greenfield, Indiana. Brought from the scene of a minor automobile accident, she received treatment for premature labor apparently induced by sudden pressure to her abdomen caused by the tightening of her seatbelt. Hancock Memorial Hospital records reflect that Todd was given a 25 milligram dose of Brethine (terbutaline sulfate) subcutaneously shortly after she was admitted in order to arrest labor. The drug was administered pursuant to the orders of Dr. Michael Boothe, an obstetrician-gynecologist on call at the hospital. But Richard Brown, a Hancock Memorial Hospital pharmacist, testified that Brethine was available solely in tablet form on that day. He affirmed that the only injectable form of terbutaline sulfate in stock on July 4, 1986, was Bricanyl--a drug that is manufactured by Merrell Dow. The Physician's Desk Reference of 1987 contains an explicit warning against any use of Bricanyl for pre-term labor. This warning was also issued in inserts distributed along with the product as early as April 1986, three months before it was ever administered to Todd.
 
 
 3
 Billie Todd was sent home from the hospital with a prescription for Ritodrine, the only drug approved by the FDA for control of pre-term labor, which she took until about July 17, 1986. Ritodrine is manufactured by Astra. In addition, pursuant to a prescription, Todd ingested Brethine, a drug manufactured by Ciba Geigy, from July 17 to August 15, 1986.
 
 
 4
 On October 2, 1986, Billie Todd gave birth to David, who was born at full term with no apparent complications. Todd alleges that from the time she brought David home, however, he was congested and experienced severe difficulty in breathing. She claims that he wheezes at night and when he attempts to run, and that he suffers frequent colds and ear infections. Attempts by several family physicians to ameliorate the problem, she asserts, have been to no avail.
 
 
 5
 Concluding that David's chronic respiratory problems were attributable to prenatal exposure to Bricanyl, Billie Todd filed suit in Marion County Superior Court against Merrell Dow and Astra in July 1988. At the time the suit was filed, a complaint against Dr. Michael Boothe, the physician who administered Bricanyl to Billie Todd, was already pending before the Indiana Department of Insurance. But Todd did not join Dr. Boothe as an additional defendant in the state court action against Merrell Dow and Astra because Indiana law precludes suits against a health care provider until a medical review panel first renders its opinion. Merrell Dow and Astra petitioned for removal to federal district court based upon diversity of citizenship. Todd protested removal of the suit to federal court, avowing that Dr. Boothe--a non-diverse party--"certainly will be appropriately joined as a party defendant, once the Review Panel proceedings run their course." Mem. in Opposition to Removal at 1. Notwithstanding Todd's opposition to removal, however, Astra and Merrell Dow were permitted to remove the suit to the United States District Court for the Southern District of Indiana, Indianapolis Division.
 
 
 6
 Shortly thereafter, at a case management conference held on July 20, 1989, the district court limited discovery for a period of 75 days to the preliminary issue of causation. The district court directed Todd to identify expert witnesses who would testify to the issue of causation but Todd failed to do so. At two conferences with both sides, the district court specifically cautioned Todd's counsel that, in the absence of evidence establishing a causal link between the administration of Bricanyl and the alleged injuries, it would be forced to enter summary judgment for defendants. Despite these repeated admonitions, however, Todd failed to produce any evidence of causation. Seven months later, after receiving several extensions, Todd still failed to identify any expert witness or to come forward with any scientific evidence in support of the alleged causal relationship between the single subcutaneous injection of Bricanyl on July 4, 1986, and David's injuries. The district court accordingly entered summary judgment for Astra and Merrell Dow. The court refused, however, to grant defendants' motion for Rule 11 sanctions.
 
 
 7
 On appeal, Todd argues that this suit must be dismissed from federal court for lack of diversity jurisdiction because Dr. Boothe is an indispensable party under Indiana law, which guarantees the right to join physicians as additional defendants in suits against non-health care providers. She also contends that the district court abused its discretion by blocking additional discovery and by granting summary judgment without affording her a reasonable opportunity to discover information in the sole possession and control of defendants. Merrell Dow cross-appeals, asserting that the district court abused its discretion by failing to impose Rule 11 sanctions upon Todd.
 
 II.
 A. Indispensable Parties
 
 8
 When an absent person cannot be made a party, Federal Rule of Civil Procedure 19(b) directs the court to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Rule 19(b) identifies four factors to consider in making this determination: first, the extent to which a judgment rendered in the person's absence might prejudice that person or those already parties; second, whether the judgment may be shaped to avert such prejudice; third, the adequacy of any judgment rendered in the person's absence; and, finally, whether the plaintiff would have an adequate remedy if the action is dismissed for nonjoinder. See Fed.R.Civ.P. 19(b). The Supreme Court has articulated a slightly different complex of factors to be examined in determining a party's indispensability under Rule 19(b): the plaintiff's interest in an adequate forum, the defendant's interest in avoiding multiple or inconsistent obligations, the interests of the outsider whom it would have been desirable to join and the interests of the courts and the public in complete, consistent and efficient settlement of controversies. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 109-11, 88 S.Ct. 733, 737-38, 19 L.Ed.2d 936 (1968).
 
 
 9
 Attempting to evade an adverse judgment, Todd now asserts that her suit must be dismissed from federal court because Dr. Boothe is an indispensable party whose presence would destroy diversity, thereby ousting the court of jurisdiction. But Dr. Boothe is not "indispensable" as a matter of federal law. As the Supreme Court recently declared, "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Temple v. Synthes Corp., Ltd., --- U.S. ----, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) (per curiam). In Temple, the Court thus held that a physician is not an indispensable party to a products liability action against the manufacturer of a medical device in the absence of any state law to the contrary. And nothing in state law indicates otherwise in this case. For under Indiana law, Dr. Boothe is just a joint tortfeasor lacking any personal interest in this suit that is compelling enough to halt litigation in his absence. See Hertz v. Record Publishing Co. of Erie, 219 F.2d 397 (3d Cir.) (allowing federal court suit to proceed without parties because they possessed no interest in the suit making them indispensable under Rule 19(b) even though they were required by state procedural rule), cert. denied, 349 U.S. 912, 75 S.Ct. 601, 99 L.Ed. 1247 (1955). But see Morrison v. New Orleans Public Service Inc., 415 F.2d 419 (5th Cir.1969) (upholding district court's decision to dismiss suit for nonjoinder of parties who were indispensable under Rule 19(b) in light of state laws governing their rights and obligations).
 
 
 10
 The Indiana Comparative Negligence Act, however, protects medical malpractice plaintiffs by mandating that trial courts permit joinder of physicians as additional defendants in suits filed against "defendants who are not qualified health care providers" once state medical review panel proceedings have run their course. See Indiana Code § 34-4-33-11.[1] Whether this Indiana statute possesses substantive content or is a purely procedural limitation not binding in federal court is not clear.[2]
 
 
 11
 We need not definitively answer this very important and apparently very difficult question, however, because it has been waived. Todd waived her joinder argument by failing to properly present it to the district court even though she had ample opportunity to do so. Although Todd declared her intention to eventually join Dr. Boothe, she significantly neglected to mention the Indiana statute explicitly guaranteeing the right to joinder. As Merrell Dow points out, Todd never applied for reasonable delays in this suit until completion of the medical review panel proceedings against Dr. Boothe. By failing to follow the procedural requirements set forth in the Indiana Comparative Negligence Act, Todd relinquished her state law right to join Dr. Boothe. And because Todd never invoked the Indiana statute, the district court properly allowed the products liability action against Merrell Dow and Astra to proceed in federal court. Todd apparently found the federal forum satisfactory for more than one and one-half years. Only after the district court ruled against her on summary judgment did Todd suddenly discover her right to join Dr. Boothe as an additional defendant to the suit under the Indiana Comparative Negligence Act.
 
 
 12
 Characterizing her argument as "jurisdictional," Todd now maintains that it can never be waived. But the opportunity to join Dr. Boothe that is accorded Todd under state law is not a "jurisdictional" right that cannot be surrendered. The district court presumably should have remanded this suit to state court for lack of diversity jurisdiction if Todd had exercised her state law option to join Dr. Boothe, a non-diverse party. Neither Rule 19(b) nor Indiana law, however, makes Dr. Boothe an "indispensable" party to this suit in the sense that the litigation could not proceed in his absence. We doubt whether waiver would be possible had Dr. Boothe been truly "indispensable." In this case, however, the district court possessed the power to adjudicate the dispute between the diverse parties already before it--the Todds, Merrell Dow and Astra. Dr. Boothe's absence did not divest the court of this power.
 
 B. Discovery
 
 13
 The district court's denial of Todd's motion to compel general discovery of Merrell Dow's records was not an abuse of its discretion. Clutching at the single warning Merrell Dow issued against the use of Bricanyl to control pre-term labor, Todd insists that there must be something wrong with the drug. Based upon her suspicion, she claims a right to scrutinize all documents relating to the drug in Merrell Dow's possession and control. But the district court properly limited the scope of discovery for the first 75 days to the issue of causation, namely "whether or not the drug Bricanyl was a proximate cause of the respiratory condition complained of by the plaintiff David Todd." Limiting discovery to a threshold issue is proper in a case that may be resolved upon summary judgment. See Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1505-06 (11th Cir.1985), cert. denied, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). Merrell Dow fully complied with all Todd's discovery requests regarding the issue of causation. Todd's speculation that Merrell Dow must possess unspecified additional information is not sufficient grounds to embark upon a virtually boundless fishing expedition. See United States v. Bob Stofer Oldsmobile-Cadillac, Inc., 766 F.2d 1147, 1153 (7th Cir.1985) (refusing to grant Rule 56(f) continuance for additional discovery where party has made only "vague assertions" that further discovery would develop genuine issues of material fact).
 
 
 14
 The district court allowed Todd sufficient time, moreover, in which to name an expert witness. But Todd failed to name any expert willing to testify regarding causation after more than one and one-half years of discovery. Because Todd's failure to identify an expert is attributable to her own dilatory conduct (she did not even attempt to contact experts in the field until more than one year after suit was filed), she cannot now invoke Rule 56(f) to buy additional time. See Koplove v. Ford Motor Co., 795 F.2d 15 (3d Cir.1986) (denying Rule 56(f) extension to name expert witness after nine months had passed when plaintiff failed to specify affirmative efforts already made and why those efforts came to nought).C. Summary Judgment
 
 
 15
 As usual, we review the district court's entry of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party, here Billie Todd. See Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment whenever "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." No genuine issue of material fact exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511. Thus a party cannot survive a summary judgment motion merely by casting " 'some metaphysical doubt as to the material facts.' " Baker v. Elmwood Distributing, Inc., 940 F.2d 1013, 1017 (7th Cir.1991) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511.
 
 
 16
 As the district court observed, Todd must demonstrate by a preponderance of the evidence a causal connection between the injection of Bricanyl and David's alleged injuries in order to prevail under Indiana law. See Watson v. Medical Emergency Serv. Corp., 532 N.E.2d 1191 (Ind.Ct.App.1989). To establish a causal relationship between a particular product and alleged injuries, a plaintiff generally presents credible expert witness testimony. See Lynch v. Merrell-National Laboratories, 830 F.2d 1190 (1st Cir.1987). Yet after over one and one-half years of discovery, Todd has failed to identify a single expert willing to provide testimony as to causation nor has she come forward with any scientific evidence of a causal link between the drug and David's alleged injuries. On this exceedingly sparse factual record, the district court properly granted summary judgment in favor of Merrell Dow and Astra.
 
 III.
 
 17
 It is too late for Todd to avert an adverse judgment based upon her state law option to join Dr. Boothe, a non-diverse party whose presence would necessarily destroy jurisdiction. The district court accorded Todd more than adequate time to conduct discovery and find an expert witness. It properly granted summary judgment in favor of defendants, therefore, when Todd failed to adduce any evidence of a causal connection between the injection of Bricanyl and David's alleged respiratory problems after more than one and one-half years of discovery. In addition, the district court did not abuse its discretion in denying defendants' motion for Rule 11 sanctions. The district court's judgment is therefore AFFIRMED.
 
 
 
 [1]
 The Indiana Comparative Negligence Act, Ind.Code § 34-4-33-11 (1984) provides:
 Actions brought against qualified health care providers--Reasonable delays--Joinder.--When an action based on fault is brought by the claimant against one or more defendants who are qualified health care providers ... and, also is brought by suit against one or more defendants who are not qualified health care providers, upon application of the claimant, the trial court shall grant reasonable delays in the action brought against those defendants who are not qualified health care providers until the medical review panel procedure can be completed as to the qualified health care providers. When an action is permitted to be filed against the qualified health care providers, the trial court shall permit a joinder of the qualified health care providers as additional defendants in the action on file against the nonhealth care providers.
 
 
 [2]
 Under the rule developed in Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, a federal court sitting in diversity must apply a substantive state statute in the absence of any countervailing federal policies. See Feinstein v. Massachusetts General Hosp., 643 F.2d 880 (1st Cir.1981) (state statute requiring plaintiffs unsuccessful before malpractice tribunal to post a bond before filing suit held binding in federal court because it embodied substantive policy objectives and because there was no countervailing federal interest); Travelers Ins. Co. v. Riggs, 671 F.2d 810 (4th Cir.1982) (state law prohibiting involuntary joinder of an insurer was not binding in federal court because of countervailing federal policy)
 Todd has a strong argument that the Indiana Comparative Negligence Act should govern diversity actions in federal court for the statute is more than a mere form or mode of regulating litigation--it appears to possess substantive attributes. The Indiana Medical Malpractice Act, a companion statute that is binding in federal court, requires malpractice claims to be presented to a medical tribunal prior to institution of litigation. See Hines v. Elkhart Gen. Hosp., 603 F.2d 646 (7th Cir.1979) (Indiana Medical Malpractice Act, which requires submission of medical malpractice claim to a medical review panel for its opinion prior to institution of judicial action, is applicable in federal court sitting in diversity). As a result, medical malpractice plaintiffs were unable to join physicians in suits against other parties because the statute of limitations on their other claims would have run before the medical review process had been completed. The Comparative Negligence Act was enacted to prevent prejudice to such plaintiffs. It mandates that trial courts permit joinder of physicians as additional defendants once malpractice review panel proceedings have come to a close. Read together, these two statutes thus embody a substantive compromise: Indiana has attempted to deter frivolous malpractice litigation while simultaneously protecting meritorious claims. As one primary drafter of the Comparative Negligence Act explained:
 The medical malpractice statute creates a problem as to claims asserted against a defendant covered by the Medical Malpractice Act and a defendant not so covered. Typically, the claims would be joined in one action. One of the purposes would be to prevent the claimant from being whipsawed by two defendants, i.e., by a defendant physician blaming the other defendant, for example a drug company, and by the defendant drug company in turn blaming the physician. This kind of finger pointing by defendants is likely to do the claimant no harm when it occurs in the same action. It may cause serious harm, however, when the defendants are sued in separate actions.... Section 11 of the Act, added by Senate Bill 419, deals with this situation by simply providing that the claimant may sue the nonhealth care provider; then, upon request by the claimant, the court shall grant reasonable delays in that action until the medical review panel procedure has been completed. Thereafter, the court is required to permit joinder of the qualified health care provider as an additional defendant. Thus, a claimant who is worried that the drug company will succeed in laying the blame on the physician in the first action, and that the physician will succeed in tying the blame on the drug company in the later separate action has in section 11 an antidote for his worry.
 Baliff, Drafting and Legislative History of the Comparative Fault Act, 17 Ind.L.Rev. 863, 876 (author served as primary drafter of the statute).
 If we apply only the Medical Malpractice Act while ignoring related provisions of the Comparative Negligence Act, we might undercut Indiana's substantive policy objectives. By allowing defendants to evade joinder in federal court, moreover, we may well encourage the very evils that Erie was meant to guard against--forum-shopping and inequitable administration of the laws.