998 F.2d 487
 Prod.Liab.Rep. (CCH) P 13,653
Sarah HERRIOTT, Individually and as Special Administrator of
the Estate of Brutus Herriott, Deceased, Plaintiff-Appellant,
v.
ALLIED SIGNAL, INCORPORATED, a foreign corporation,
Engineering Materials, a foreign corporation,
Allied Chemical Corporation, a foreign
corporation, Defendants-Appellees.
 No. 92-2953.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 25, 1993.
Decided July 2, 1993.
 
 Randall F. Peters (argued), Chicago, IL, for plaintiff-appellant.
 Thomas H. Fegan, John W. Bell, Mindy Kallus (argued), Robert J. Comfort, Johnson & Bell, Chicago, IL, for defendants-appellees.
 Before CUDAHY and FLAUM, Circuit Judges, and MIHM, District Judge.*
 CUDAHY, Circuit Judge.
 
 
 1
 The plaintiff's husband was killed in February 1989 while working around equipment designed by one of the defendants. The plaintiff filed a wrongful death action contending that the defendant's design and manufacturing errors caused her husband's death. The district court granted the defendant's motion for judgment on the ground that the Illinois ten-year statute of repose, Ill.Rev.Stat. ch. 110, para. 13-214(b), barred the plaintiff's action. We affirm.
 
 I.
 
 2
 Between 1953 and 1957, Interlake Steel (which later became ACME Steel) hired Allied Signal, Inc. (Allied) to design, manufacture and construct two batteries of coke ovens--each consisting of a row of fifty ovens--at Interlake's facilities. Allied also sold Interlake two pieces of ancillary equipment called larry-cars,[1] which receive coal from the plant's charging bins and carry it along the 490 feet of rail to a coke oven. Allied assembled and constructed the larry-cars on top of the batteries during construction of the batteries.
 
 
 3
 ACME employee Brutus Herriott operated the larry-cars. On February 1, 1989, Mr. Herriott was killed while working on a larry-car. His wife, Sarah Herriott, subsequently brought a six-count complaint, individually and as administrator of Mr. Herriott's estate, in state court against Allied-Signal, Inc., Engineering Materials, Allied Chemical Corp. and the Wilputte Coke Oven division of Allied Chemical & Dye Corp.--collectively "Allied." The complaint contended that Allied's errors in its design and manufacture of the larry-car rendered the equipment unreasonably dangerous and defective and that this condition proximately caused her husband's death. The action was removed to federal court, where Allied moved for summary judgment on the grounds that the statute of repose relevant to improvements to real property, Ill.Rev.Stat. ch. 110, para. 13-214, barred the plaintiff's action. The district court agreed and granted the motion, 801 F.Supp. 52. Mrs. Herriott appeals.
 
 II.
 
 4
 We review the district court's grant of summary judgment de novo.
 
 
 5
 The only issue in this case is whether the Illinois statute of repose relating to design and construction of improvements to real property applies to the circumstances before us. That statute provides that
 
 
 6
 [n]o action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.
 
 
 7
 Ill.Rev.Stat. ch. 110, para. 13-214(b). The plaintiff contends the statute is inapplicable on two grounds--namely, that the construction project Allied took part in did not constitute "an improvement to real property" and that Allied did not participate in the "design, planning, supervision, observation or management of construction, or construction" of the project. An underlying theme that punctuates the plaintiff's statute-based arguments also forms the basis of a third, policy-based argument involving the interplay between the respective statutes of repose for improvements to real property and for products liability. We address each argument in turn.
 
 
 8
 We first consider whether Allied's work for Interlake was an improvement to real property. Although this court and the Illinois appellate courts have developed a framework for analyzing what constitutes an improvement to real property,[2] it was not until recently that the Illinois Supreme Court addressed what was for it an issue of first impression. In St. Louis v. Rockwell Graphic Systems, Inc., 153 Ill.2d 1, 178 Ill.Dec. 761, 605 N.E.2d 555 (1992), the court vacated a dismissal based on the instant statute of repose, stating that it had an insufficient factual record concerning the printing press at issue and the construction modifications necessary to install it. 153 Ill.2d at 5-6, 178 Ill.Dec. at 763, 605 N.E.2d at 557. Nevertheless, the court did elaborate upon its understanding of "an improvement to real property," citing the Black's Law Dictionary definition[3] and setting out relevant criteria, including
 
 
 9
 whether the addition was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced.
 
 
 10
 153 Ill.2d at 4-5, 178 Ill.Dec. at 762, 605 N.E.2d at 556 (citations omitted).
 
 
 11
 The St. Louis court confirmed that whether an item constitutes an improvement to real property is a question of law, though resolution of the question is grounded in fact. 153 Ill.2d at 3, 178 Ill.Dec. at 762, 605 N.E.2d at 556; see also Zimmer v. Village of Willowbrook, 242 Ill.App.3d 437, 182 Ill.Dec. 840, 610 N.E.2d 709 (2d Dist.1993). The record in the case before us--unlike that in St. Louis--is adequate to permit a determination of whether Allied's project was an improvement to real property.
 
 
 12
 Case law in this circuit and in the Illinois state courts supports the view that courts must contemplate the entire system that the defendant helped to design or construct, not just the component that may have caused the injury or death. See, e.g., Hilliard, 834 F.2d at 1356 (stating that "if a component is an essential or integral part of the improvement to which it belongs, then it is itself an improvement to real property") (citing Mullis v. Southern Co. Servs., Inc., 250 Ga. 90, 94, 296 S.E.2d 579, 584); Kleist v. Metrick Electric Co., 212 Ill.App.3d 738, 156 Ill.Dec. 839, 841-42, 571 N.E.2d 819, 821-22 (1st Dist.1991). The larry-car is an integral part of the coke processing system that Allied was primarily responsible for constructing. Moreover, since the larry-car's construction was concomitant with the overall construction of Interlake's coke processing plant, neither the system nor the larry-car is fairly characterized as a mere repair or replacement. Finally, the system indisputably increased the value of the property and enhanced its use. The battery project was designed to process coke, and the larry-car was assembled as an integral component of that process. See Hilliard, 834 F.2d at 1355-56. Bolstering this conclusion is the undisputed testimony that coke cannot be processed without the use of a larry-car. See Adair v. Koppers Co., Inc., 541 F.Supp. 1120, 1125 (N.D.Ohio 1982), aff'd, 741 F.2d 111 (6th Cir.1984) (emphasizing that the function of the conveyor at issue, namely the transportation of coal, was essential to the operation of the plant). Under the ordinary terms of the statute and informed by courts' interpretation of that language, we conclude that Allied's work for Interlake resulted in an improvement to real property.
 
 
 13
 Our second inquiry, whether Allied participated in the "design, planning, supervision, observation or management of construction, or construction" of the improvement, is more straightforward. As we noted in Hausman v. Monarch Machine Tool Co., 997 F.2d 351 (7th Cir.1993), which was argued the same day as the instant case, the list of included activities is notably disjunctive and the defendant falls within the protected class if it engaged in any one of the listed activities. Moreover, "[m]ere labels are not dispositive" and section 13-214 "protects, on its face, anyone who engages in the enumerated activities." Hilliard, 834 F.2d at 1358 n. 6.
 
 
 14
 The record in the present case shows that Allied designed and manufactured the coke ovens and the larry-car for Interlake's coke-processing facility and installed the equipment at Interlake's plant. The plaintiff's complaint admits as much in its statement that Allied "was engaged in the business of designing, manufacturing, assembling, distributing, and selling certain coke ovens and ancillary equipment." Although the plaintiff insists that Allied simply manufactured and sold the larry-car to Interlake, this arguable dispute over how to characterize Allied's involvement in the project cannot overcome the clear evidence that, at the very least, the defendant participated in the design and construction of the coke-processing facility. No material issue of fact remains as to whether the terms of section 13-214 encompass the defendant, and unless the plaintiff can prevail on her related but more policy-based argument regarding the interplay between the Illinois statutes of repose for improvements to real property and products liability, section 13-214 bars her suit.
 
 
 15
 In the latter connection, the plaintiff makes a fairly persuasive argument that the evolution of protection under section 13-214(b) will effectively bar any action based upon product liability in tort that is commenced ten years after the product was sold to a manufacturer. Specifically, the plaintiff characterizes the larry-car as a product--not an improvement--that should be subject to the statute of repose for products liability, Ill.Rev.Stat. ch. 110, para. 13-213(b), which bars products liability actions based on the doctrine of strict liability. Accordingly, she contends Allied is not an architect or a general contractor, but merely a manufacturer of a product that was incorporated into a construction project.
 
 
 16
 The district court acknowledged an "obvious tension" between the statutes of repose for products liability and improvements to real property. Mem. Op. at 13. The Illinois Supreme Court has yet to set forth a framework for understanding the correlation between the two regimes, and its recent St. Louis decision did not explicitly address the concern other than to recognize that "an 'improvement to real property' need not necessarily constitute a fixture." 153 Ill.2d at 4, 178 Ill.Dec. at 762, 605 N.E.2d at 556. But while we agree that the inescapable overlap between the two statutes is problematic, we believe a workable analysis looms in the very language and purpose of section 13-214.[4]
 
 
 17
 Under such an analysis, the scope of the work that the defendant engaged in becomes the central query, rather than the nature of the equipment that injured the plaintiff. The district court called this an "activity analysis," citing the Missouri Supreme Court case that adopted it, Blaske v. Smith & Entzeroth, Inc., 821 S.W.2d 822, 837-38 (Mo.1991) (en banc), and predicted that the Illinois Supreme Court would find it useful. Mem. Op. at 14. Particularly because such an approach may be an intuitive extrapolation from the statutory terms, we agree. Section 13-214 explicitly protects the "design, planning, supervision, observation or management of construction, or construction" of the improvement at issue. Notwithstanding the extent to which the larry-car may appear to be a "product," Allied's substantial role in designing and constructing the coke-processing facility and its accessory components places it squarely within the class of defendants covered by the statute. Our plain reading of the statute therefore persuades us that the district court correctly concluded that the statute of repose bars the plaintiff's action.
 
 III.
 
 18
 For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.
 
 
 
 *
 The Honorable Michael M. Mihm, Chief Judge of the United States District Court for the Central District of Illinois, is sitting by designation
 
 
 [1]
 A larry-car weighs thirty tons and is 12 feet high, 20 feet long and 35 feet wide
 
 
 [2]
 See, e.g., Hausman v. Monarch Machine Tool Co., 997 F.2d 351 (7th Cir.1993); Hilliard v. Lummus Co., 834 F.2d 1352 (7th Cir.1987); Kleist v. Metrick Electric Co., 212 Ill.App.3d 738, 156 Ill.Dec. 839, 571 N.E.2d 819 (1st Dist.1991)
 
 
 [3]
 "Improvement" is defined in Black's Law Dictionary as "a valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." St. Louis, 153 Ill.2d at 4, 178 Ill.Dec. at 762, 605 N.E.2d at 556 (citing Black's Law Dictionary 682 (5th ed.1979))
 
 
 [4]
 We note that it would be inappropriate for this panel in a diversity case to engage in policy-based reasoning going beyond reported state decisions regarding an important issue of state law that the state supreme court has not yet expounded on