Willie **GARNER** and Sara Garner,
Plaintiffs–Appellants,

v.

**KINNEAR MANUFACTURING COMPANY,** Midwest Kinnear Manufacturing Company, Kinnear Manufacturing Company, a Division of Harsco Corporation, Harsco Corporation, and Wayne Dalton Corporation, f/k/a Kinnear Manufacturing Company, Defendants–Appellees.

Nos. 92–2858, 92–3302.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1993.

Decided Sept. 26, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 23, 1994.

Clifford W. Horwitz, Marc A. Perper, and Jay R. Luchsinger (argued), Horwitz, Horwitz & Associates, Chicago, IL, for plaintiffs-appellants.

Thomas H. Fegan, Robert M. Burke, Brian C. Fetzer, Mindy Kallus (argued), and Genevie F. Labuda, Johnson & Bell, Chicago, IL, for defendants-appellees.

Before BAUER, CUDAHY and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

One of the plaintiffs, Willie Garner (hereinafter "Garner"), was injured when a motor assembly used to operate a rolling warehouse door fell on him. He and his wife then sued the manufacturer for negligent manufacture and installation. The district court granted the defendant's motion for summary judgment, holding the suit was barred under the Illinois statute of repose. We affirm.

## I.

Garner suffered severe personal injuries on May 19, 1989 when a cast-iron mounting plate, part of the mechanism used to operate an overhead warehouse garage door, fractured and the plate and the attached motor fell and struck him. In 1991, Garner and his wife filed suit against defendant Kinnear Manufacturing Company ("Kinnear"),[1] in the Northern District of Illinois, alleging that Kinnear's negligence proximately caused Garner's injuries. In particular, the plaintiffs alleged that Kinnear was negligent in: (1) manufacturing a mounting plate that was too weak to support a motor; (2) manufacturing the mounting plate with a defective weld; (3) failing to warn that the plate was inadequate to support the motor; (4) installing a plate that was too weak to support a motor; (5) installing a door assembly that placed excessive weight on the plate; and (6) establishing a door assembly in which the movement of the equipment created excessive stress upon the plate.

Kinnear, in its answer, raised as an affirmative defense the Statute of Repose for Improvements to Real Property, 735 ILCS 5/13–214(b) (1992). Section 13–214(b) precludes a tort action arising from construction activity unless filed within ten years of the completion of that construction activity. Because Kinnear installed the overhead steel door in 1970, it maintained the claim was time-barred, and as a consequence, moved for summary judgment.

In support of its motion, Kinnear submitted the deposition testimony of Robert S. Taylor, a project manager for Abell–Howe Company, the general contractor that worked on the building in issue in 1970. Taylor testified that Kinnear, a subcontractor, installed a rolling steel door for an addition to the building. The door consisted of several parts, including the door, the operating mechanism and the mounting plate to which the door was affixed. Through Taylor's testimony, Kinnear sought to show that the door assembly was part of new construction in connection with the building and was thus an improvement to real property. Therefore, § 13–214(b) should apply. Kinnear also submitted the affidavit of Harold Page, the former manager of the Chicago branch of Kinnear. Page testified that following Kinnear's 1970 installation of the door, Kinnear did not repair, maintain or service the door involved in the injury to Garner. Since, according to Kinnear, Garner sustained injuries nineteen years after Kinnear installed the garage door system, § 13–214(b) bars the Garners' complaint.

Following the testimony of Page, the Garners requested leave to depose newly disclosed witnesses, including Page, because Page's identity had not been revealed in Kinnear's answers to interrogatories. The district court granted the Garners' motion in part but denied their request to depose Page. The Garners then filed motions to compel discovery and for leave to amend the complaint to conform to evidence adduced during discovery, but the district court denied both motions after counsel for the Garners failed to appear for the hearing on the motions. After hearing oral argument on the motions, the court declined to change its order and requested that the Garners respond to the summary judgment motion.

The Garners opposed Kinnear's motion for summary judgment with the affidavit of Robert Larson, a plant engineer and electrical foreman of Continental Steel Corporation (now Sheffield Steel). Larson testified that a 1983 purchase order and requisition slip submitted by Continental to Kinnear showed that Continental had ordered a 2–horsepower motor from Kinnear in 1983 to replace the original 1½–horsepower motor above the warehouse door. The new motor was installed on the mounting plate that later fractured and fell on Garner. Larson also testified that in 1984, one year later, Kinnear had sold and installed counterbalance springs above one of the two doors on the south wall of the plant: either the southeast or southwest door. The mounting plate that fractured and

---

1. Harsco Corp. engaged in the activities that allegedly led to Garner's injury under the name of Kinnear Manufacturing Co., a division of Harsco. Harsco was later acquired by Wayne Dalton Corp. Br. Appellee at 4 n. 4. For simplicity, we refer to all three parties collectively as "Kinnear."

injured Garner was situated above the southeast door of the plant.

The Garners also submitted affidavits of three mechanical engineers to establish that the replacement motor and counterbalance springs were the proximate causes of Garner's injuries. The engineers opined that the installation of the 2–horsepower motor in 1983 applied additional stress (beyond that of the replaced 1½–horsepower motor) to the mounting plate during operation of the overhead door system. This additional force from the larger 1983 motor, the engineers reasoned, caused the plate to fracture, and as a result, to injure Garner. In addition, one engineer also testified that the mounting plate fracture may also have been caused by Kinnear's improper installation of the counterbalance springs in 1984. Another of the plaintiffs' witnesses inspected the failed plate and concluded that the plate had been welded after its manufacture to repair faults in the casting. The welding, however, did not restore the original strength of the casting but merely hid the casting's defects. The defective weldpoint, in the expert's view, contributed to the ultimate failure of the plate.

In reply, Kinnear asked the court to disregard Larson's affidavit because it was not sworn to. In the alternative, Kinnear pointed out that the 2–horsepower motor sold to Continental was installed by Continental employees and that Kinnear could not have known where Continental planned to use the motor.

The district court on July 8, 1992 granted Kinnear's motion for summary judgment. The court concluded that "[a]s the uncontradicted evidence establishes that Kinnear installed the rolling steel door as part of a new building addition in 1970 and performed no additional service, maintenance or repair thereafter, the construction statute of repose is properly applied in this case." *Garner v. Kinnear Manufacturing Co.*, No. 91 C 2089, 1992 WL 166924, at *3, *1992 U.S. Dist. LEXIS 10,322*, at *7 (N.D.Ill. July 8, 1992). Following entry of summary judgment, the Garners moved for leave to file a second amended complaint. The district court denied the motion, and the Garners appeal.

## II.

■ We, of course, review the entry of summary judgment de novo. We will affirm if there is no genuine issue of material fact, so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Kralman v. Ill. Dept. of Veterans' Affairs*, 23 F.3d 150, 152 (7th Cir.1994). Summary judgment is proper where the evidence presented by the opponent of the motion is not significantly probative and therefore not a sufficient basis to support a jury verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Baker v. Elmwood Distributing, Inc.*, 940 F.2d 1013, 1017 (7th Cir. 1991).

### A. *Improvement to Real Property*

■ The primary legal issue in this case is, of course, whether the Illinois statute of repose bars the Garners' claim. That statute provides in pertinent part:

> No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.

735 ILCS 5/13–214(b) (1992). The Garners contend that the statute is inapplicable both because the mounting plate was not an improvement to real property and because Kinnear does not belong to the class protected by the statute. We are not persuaded by either of these arguments.

Whether an item constitutes an "improvement to real property" is a question of law but its resolution is grounded in fact. *Herriott v. Allied Signal, Inc.*, 998 F.2d 487, 489 (7th Cir.1993). The Garners contend that the mounting plate is a "product" (and not an improvement to real property) because it was not manufactured at the site of Kinnear's Joliet plant,[2] and because it was merely at-

---

2. For a useful discussion of on-site versus off-site manufacturing activity, see *Blaske v. Smith &*

tached to a mounting apparatus with a few bolts.[3] Br. Appellants at 26. The case law, however, does not indicate that these factors are controlling in determining whether an item is an "improvement" within the meaning of the statute.[4] In defining what constitutes an improvement, the Illinois Supreme Court in a recent case has cited first the definition of "improvement" as provided in Black's Law Dictionary:

> A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.

*St. Louis v. Rockwell Graphic Systems, Inc.*, 220 Ill.App.3d 704, 163 Ill.Dec. 142, 145, 581 N.E.2d 93, 96 (1991) (citing Black's Law Dictionary 682 (5th ed. 1979)), *vacated on other grounds*, 153 Ill.2d 1, 178 Ill.Dec. 761, 762, 605 N.E.2d 555, 556 (1992). *See also State Farm v. W.R. Grace & Co.—Conn.*, 24 F.3d 955, 958 (7th Cir.1994) (appealing to an "ordinary meaning" of the word "improvement"). The court has also provided relevant criteria for determining what constitutes an "improvement to real property": whether the addition was intended to be permanent or temporary, whether it became an integral component of the overall system and whether the value and use of the property was enhanced. *Id.*

Further, this court has held that, in making an improvement determination, courts must consider the entire system that the defendant helped to design or construct and not merely the component that may have caused the injury. *Herriott*, 998 F.2d at 490. *See also Hilliard v. Lummus Co.*, 834 F.2d 1352, 1356 (7th Cir.1987) ("[T]o artificially extract each component from an improvement to real property and view it in isolation would be an unrealistic and impractical method of determining what is an improvement to real property.... [W]e find that if a component is an essential or integral part of the improvement to which it belongs, then it is itself an improvement to real property."). To separate for purposes of analysis a component from an improvement to real property of which it is a part does not avoid application of § 13–214(b) and, according to the case law, defeats the purpose of the statute of repose. *Kleist v. Metrick Electric Co.*, 212 Ill.App.3d 738, 156 Ill.Dec. 839, 842, 571 N.E.2d 819, 822 (1991).

The record reveals that the mounting plate that supported the motor was a component of the overhead door assembly that Kinnear installed in 1970 as part of a building addi-

*Entzeroth, Inc.*, 821 S.W.2d 822, 837–38 (Mo. 1991).

**3.** By stressing the mode and sufficiency of the plate's annexation to the realty, the Garners might be understood to be invoking the law of fixtures and to be suggesting that fixtures and improvements amount to the same thing. This court and the Illinois courts have held otherwise. Unlike some jurisdictions, the Illinois Supreme Court has distinguished the term "fixture" from the phrase "improvement to real property." *St. Louis v. Rockwell Graphic Sys.*, 153 Ill.2d 1, 178 Ill.Dec. 761, 762, 605 N.E.2d 555, 556 (1992). This court later held that "[n]othing in § 13–214 indicates that it intended the peculiar definitions of fixture law to apply to that section." *Hilliard v. Lummus Co.*, 834 F.2d 1352, 1355 (7th Cir. 1987).

**4.** Indeed, a "product," under appropriate circumstances, can constitute an improvement to real property. *Witham v. Whiting Corp.*, 975 F.2d 1342, 1345 (7th Cir.1992) (citing *St. Louis v. Rockwell Graphic Systems, Inc.*, 220 Ill.App.3d 704, 163 Ill.Dec. 142, 144, 581 N.E.2d 93, 95 (1991)); *see also Cross v. Ainsworth Seed Co.*, 199 Ill.App.3d 910, 145 Ill.Dec. 927, 933–35, 557 N.E.2d 906, 912–14 (1990). (Note that while the Illinois Supreme Court vacated the appellate court's judgment in *St. Louis*, the court merely remanded because the case record was insufficient, not because it rejected the proposition that something can be both a product and an improvement at the same time.)

In any event, the record indicates that the Kinnear door assembly was not so standardized that it should be excluded from the statute's protection. *People v. Asbestospray Corp.*, 247 Ill. App.3d 258, 186 Ill.Dec. 462, 467–68, 616 N.E.2d 652, 657–58 (1993) ("To be included within [§ 13–214(b)], a manufacturer must perform some role related to the construction site beyond provision of standard products generally available to the public and not custom designed for the project."); *see also Witham*, 975 F.2d at 1347. The assembly was not mass-produced and Kinnear did not merely pluck it from its inventory to place it in the stream of commerce. On the contrary, Kinnear manufactured the door system according to specifications specially provided by the owner of the building. ROA 27, Ex. D.

tion. ROA 27, Ex. D, at 28. The addition involved excavation, concrete work, structural steel, electric and heating systems, storm drainage, windows, rolling steel doors and pass doors. *Id.* at 20. The plate in question supported the motor that raised the door to allow ingress to and egress out of the building. The mounting plate and door assembly were therefore integral components of the building addition. The record also shows that the Kinnear door assembly was new and was not merely a replacement or repair of an existing door. *Id.* at 22, 27. Moreover, there is no indication that the door assembly was installed for temporary rather than permanent use. Lastly, it seems clear that the installation of the door assembly enhanced the value and utility of the original real estate, since the assembly (which measured roughly 14 feet by 30 feet) allowed easy movement of large objects and materials into and out of this industrial building. The door assembly obviously added value to the building. ROA 27, Ex. D. Thus, according to the reasoning of *St. Louis* and like cases, the garage door system should appropriately be classified as an improvement to realty. The door assembly amounts to more than a mere repair or replacement.

### B. *Class Protected by the Statute*

 The Illinois statute of repose insulates persons who are involved in "the construction of an improvement to real property" or "in the design, planning, supervision, observation or management of construction." We observed recently in *Hausman v. Monarch Mach. Tool Co.* that the list of protected activities is notably disjunctive; Kinnear is a member of the class if it engaged in any of these enumerated activities. 997 F.2d 351, 353 (7th Cir.1993). The Garners repeat the

same argument advanced by the plaintiff in *Hausman:* the defendant is a mere manufacturer of a component as opposed to a contractor, architect or engineer as contemplated by § 13–214. The response, as in *Hausman,* is that "mere labels are not dispositive," and § 13–214 "protects, on its face, anyone who engages in the enumerated activities." *Id.* at 354 (citing *Hilliard,* 834 F.2d at 1358 n. 6). It is uncontested that Kinnear designed the blueprint showing how the door mounting apparatus should be assembled and that Kinnear installed the whole overhead door assembly.[5] ROA 27, Ex. D, pp. 19, 28, 33. Because of its clear role in the design and construction of the door assembly, rather than as a mere manufacturer of the door in isolation, Kinnear can claim membership in the class of defendants protected by the statute of repose.[6]

### C. *Material Issue of Fact*

 The Garners further claim that certain factual questions exist here creating genuine issues of material fact precluding summary judgment. In particular, they contend that there is a genuine issue of triable fact with respect to the replacement motor and counterbalance springs installed in 1983 and 1984. However, the Garners never alleged that the injury was caused by the replacement motor itself but rather that the injury resulted because the *mounting plate* was inadequate and negligently installed. And there was uncontroverted testimony that Kinnear's installation of springs was at a door other than the one in question and that Kinnear could not have known on which door the replacement motor (which Kinnear admittedly supplied) would be attached. Further, another affidavit on which the Garners

---

5. We do not mean to suggest that the provision of blueprints or design specifications, without more, is sufficient to bring a party within the class of persons protected by the statute. *See, e.g., State Farm,* 24 F.3d at 957 (holding that a product manufacturer's instructions do not convert that party into a designer or a builder for the purposes of the statute). The present case involves a door system custom designed to fit a particular building. Further, Kinnear itself constructed and installed the door assembly.

6. The mode of analysis that examines the scope of the work that the defendant engaged in rather than only the specific equipment that injured the plaintiff we term "activity analysis," following the Missouri Supreme Court. *Herriott,* 998 F.2d at 491 (citing *Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 837–38 (Mo.1991) (en banc)). In *Herriott,* we predicted that the Illinois Supreme Court would find this type of analysis useful. *Id.*

relied was incompetent and thus properly disregarded by the district court.[7]

The Garners also contend that issues of triable fact exist with respect to whether Kinnear fraudulently concealed the Garners' cause of action and with respect to whether Kinnear provided an express warranty of the mounting plate. However, the Garners did not allege either the fraudulent concealment theory or the express warranty theory in their complaint, and the district court did not abuse its discretion in refusing to permit the Garners to amend their complaint to include these theories.[8]

## III.

The Garners' contend, finally, that the court abused its discretion in denying the Garners' motions to amend the complaint and in denying the Garners' motion to compel the deposition of Harold Page. Here again, their contentions fail.

7. In response to Kinnear's motion for summary judgment, the Garners submitted an unsworn statement from an engineer at the plant where Garner was injured which was not notarized in the engineer's presence. ROA 50, Ex. B, at 7–9.

8. On appeal, the Garners allege that § 13–214(b) is inapplicable because Kinnear fraudulently concealed flaws in the mounting plate with cosmetic welding. Section 13–214(e) provides that "[t]he limitations of this Section shall not apply to causes of action arising out of fraudulent misrepresentations or to fraudulent concealment of causes of action." The Garners contend that the district court—which declined to reach their fraud argument because they failed to allege fraud in their complaint—committed reversible error. They argue that the Federal Rules do not require and, indeed, prohibit them from responding to Kinnear's affirmative defense of the statute of repose. See Fed.R.Civ.P. 7(a). Notwithstanding the strictures of Rule 7, however, a party is still obligated to include enough information in its pleading to give adversaries notice of the allegations and theories to be relied on. See Fed.R.Civ.P. 8. With respect to the Garners' fraud theory, no such allegation appeared in the complaint (which sounded primarily in negligence) and, as indicated, the district court did not abuse its discretion in denying the Garners' motions to amend the pleadings to include fraud allegations.

In any event, it seems unlikely that the Garners' could prove either fraudulent misrepresentation or fraudulent concealment of a cause of

## A. Motions to Amend

■ Federal Rule of Civil Procedure 15(a) provides that, after a responsive pleading has been served, a party must obtain leave of the court or written consent of the opposing party to amend a pleading. *Perrian v. O'Grady,* 958 F.2d 192, 194 (7th Cir.1992). While leave to amend should be freely given when justice requires, district courts have broad discretion to deny motions to amend in cases of undue delay, bad faith or dilatory motives, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice or futility. *Id.* at 194; *see also National Hockey League v. Metropolitan Hockey League Club,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (action dismissed for failure to respond to discovery); Local Rule 12, United States District Court for the Northern District of Illinois (permitting denial of motions for lack of prosecution).

■ Here, the Garners moved to amend the complaint twice—once four months after Kinnear moved for summary judgment and

action. The elements of fraudulent misrepresentation include a false statement of material fact with knowledge of the statement's falsity by the person making it, reliance by the party to whom the statement is made and intent to induce such reliance and damages. *Board of Educ. of City of Chicago v. A, C & S, Inc.,* 131 Ill.2d 428, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989). Further, the concealment of a cause of action sufficient to toll the statute of limitations generally entails affirmative acts or representations calculated to prevent the discovery of the cause of action. *Chicago Park District v. Kenroy, Inc.,* 78 Ill.2d 555, 37 Ill.Dec. 291, 294, 402 N.E.2d 181, 184 (1980). The Garners contend that a jury could have found that Kinnear knowingly concealed the defect in the mounting plate, but there is no suggestion that Kinnear made a false statement or that it otherwise attempted to conceal the existence of a cause of action.

The Garners also attempt—in a few cursory sentences toward the end of their brief—to avoid the statute of repose by recharacterizing Kinnear's involvement in fabricating and installing the door as alteration, repair or negligent process design. These arguments are without merit. We have noted both that the door assembly and components were improvements to real property and that Kinnear was involved in activities protected under the statute. The Garners' conclusory attempts to recharacterize the facts, seemingly put forward as afterthoughts, do not persuade us that Kinnear should be denied protection under the statute.

once fifteen days after summary judgment had actually been entered. With respect to the first motion to amend, the district court scheduled a hearing, but the Garners failed to appear. The Garners contend that their ability to press for the amendment of the complaint was hampered by Kinnear's failure to turn over certain documents or to disclose the identities of witnesses. Yet it would appear that Kinnear did not disclose this information initially because the Garners' discovery requests pertained to the construction and installation of the door assembly that actually injured Willie Garner, while the "withheld" information concerned later transactions unrelated to the relevant door assembly. This information was submitted to show that, after Kinnear installed the door assembly that injured Garner, commercial contact between Kinnear and the plant did not involve that assembly. Even if Kinnear did withhold the information, the district court gave the Garners several months to respond to Kinnear's evidence, during which time the court granted numerous continuances. ROA 41. Moreover, prior to summary judgment, the district court told the Garners explicitly that they could explain in writing why the court should allow them to proceed under an additional theory, even if the existing record appeared to warrant summary judgment. ROA 72 at 7. Given the Garners' repeated failure to take advantage of the opportunities afforded them to press their case—and the delays incurred in providing such opportunities—we conclude that the district court did not abuse its discretion in denying the Garners' pre-judgment motion to amend.

Likewise, the Garners' failure to pursue their case diligently made it proper for the district court to deny their post-judgment motion to amend the complaint. Following the entry of final judgment, a party may not seek to amend his complaint until he has successfully moved to alter, set aside or vacate the judgment pursuant to Fed.R.Civ.P. 59(e) or Fed.R.Civ.P. 60. *Scott v. Schmidt*, 773 F.2d 160, 163 (7th Cir.1985). Although the Garners have not characterized their second motion to amend either as a Rule 59(e) or Rule 60(b) motion, in either case the district court's denial of the motion was proper.

A Rule 59(e) motion must be served within ten days after entry of the judgment, a deadline that the Garners missed. Fed.R.Civ.P. 59(e). A Rule 60(b) motion may relieve a party from final judgment only for certain enumerated reasons, and the Garners' desire to expand the allegations contained in the original complaint is not an appropriate reason. Fed.R.Civ.P. 60(b); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1112 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Thus, the Garners' post-judgment motion to amend was either untimely or substantively inadequate and was properly denied.

### B. Motion to Compel

We review the denial of a motion to compel discovery for abuse of discretion. *Todd By Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1178 (7th Cir.1991). The Garners contend that the district court abused its discretion in denying in part their motion to depose three people identified in Kinnear's summary judgment motion, whose testimony could help establish that Kinnear did not repair or service the door assembly at issue after the 1970 installation. At a discovery hearing, the district court considered the Garners' deposition motion and directed them to depose two of the three individuals, reasoning that deposing the two individuals (who apparently had personal knowledge whether Kinnear performed any post-installation work on the door assembly) could eliminate the need to depose the third individual (whose knowledge appeared to be limited to corporate documents relating to any such work). ROA 70 at 6–7. The district court did not rule out the possibility that the third individual could be deposed after the first two. The Garners ultimately agreed to this approach, stating that they would depose the first two individuals. But then they failed to do so, and they offered no explanation to the court. Given this failure, and the many other incidents in which the Garners apparently failed to press their case diligently, we find that the district court's decision to allow them to depose only two of the three

individuals was a proper exercise of discretion.

AFFIRMED.